MARION SCHOOL TWP., ETC. *v.* CHARLES F. SMITH.
CLAUDE MILLER ET AL. *v.* DAVIDSON.
MARION SCHOOL TWP. *v.* ALMA MCILREE.

[Nos. 27,225, 27,232, and 27,233. Filed June 13, 1939.]

*Carl M. Gray,* for appellants.

*Ely, Corn & Nixon,* for appellees.

SHAKE, J.—Appellees in the above cases, which are consolidated for the purposes of this opinion, entered into separate written contracts with John Survant, as trustee of Marion Township, Pike County, to teach eight-month terms in its public schools, at salaries of $800 each, commencing August 31, 1934. They taught until January, 1935, when they were discharged by Claude Miller, who succeeded Survant as township trustee on January 7, 1935. Appellees brought separate actions for their salaries from the date of their discharge to the end of the school term, and recovered. The question for review is presented by exceptions to

the overruling of appellants' demurrers to the complaints and the denial of their motions for a new trial.

It appears that the appellant township was a participant in the Common School Relief Fund, created by chapter 167, Acts 1933, §28-901 et seq. Burns 1933, sec. 6431 Baldwin's 1934. There is appended to section 3 of said act a proviso which reads as follows:

> "Provided further, That no trustee of any school township or board of trustees of any school town or school city shall enter into any transportation and/or teacher's contract without the approval of the board of department of education and any contract so entered into without said approval shall be null and void and without effect. Said certificate shall be executed in duplicate."

It is conceded by the parties that the teachers' contracts upon which appellees sued were not approved by the Board of Department of Education, as required by said proviso. Appellants contend that appellees can not recover because, by the terms of said proviso, any contract not so approved is "null and void and without effect." Appellees assert that said proviso is itself null and void because the subject-matter thereof is not embraced in the title of the act in which it appears, as required by section 19 of Article 4 of the Constitution of Indiana:

> "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

The title of chapter 167, Acts of 1933, is:

> "AN ACT providing for the levy of a tax to support the common schools of the state, providing for the apportionment and distribution of the money so raised, repealing all laws in conflict therewith, providing a penalty, and declaring an emergency."

The body of the act provides for an annual tax levy of seven cents on each $100 worth of taxable property, real or personal, in this state, and in addition thereto a poll tax of fifty cents upon each taxable poll in the state, which money, when collected, shall be paid into the state treasury for a Common School Relief Fund. The purpose of the act is to extend state aid to local school corporations whose funds are insufficient to meet the cost of maintaining the minimum educational facilities required by other legislation. Specific duties are imposed upon local school officials, county superintendents, the Board of Department of Education, the State Board of Accounts, the Auditor of State, and the Treasurer of State in the administration of the act. It is unnecessary to set out the details of the many provisions, but it is sufficient to note that no where in the act are there any references to the execution or validity of teachers' contracts, except in the proviso to the third section quoted above.

The precise question is, whether the provision of the act which says that teachers' contracts shall be null and void and without effect unless approved by the Board of Department of Education, is within the title of the act.

It has many times been said that the purposes of section 19 of Article 4 of the State Constitution are to prevent "log rolling" legislation; to prevent surprise, or fraud, in the Legislature by means of provisions in bills of which the titles give no intimation; and to apprise the people of the subject of legislation under consideration. *Moore-Mansfield, etc., Co.* v. *Indianapolis, etc., R. Co.* (1913), 179 Ind. 356, 101 N. E. 296; *Ule* v. *State* (1935), 208 Ind. 255, 194 N. E. 140. The Constitution of 1816 contained no such provision and the abuses that resulted therefrom are well illustrated by the following excerpt from the Re-

port of Debates and Proceedings of the Constitutional Convention of 1850 (p. 1086) :

"MR. OWEN. I am in favor of the amendment. Gentlemen say that nothing is to be effected by it. It will, without doubt, prevent incongruous subjects being grouped together in the same bill. Of this I remember a remarkable example, that came under my own knowledge, while a member of the State Legislature. There was a bill introduced by a member, whose name it is not necessary to mention. The title of the bill was to appropriate a portion of the three per cent. fund, coming to a certain county, 'and for other purposes.' It was read a first and second time, by its title, as a local bill: on its third reading, some member asked for the reading of the 'other purposes;' and it came out that the last section contained a provision divorcing a man from his wife. (Laughter.)

"MR. MAGUIRE. I have heard much complaint—and there is undoubtedly some ground for the complaint—as to the manner in which legislation has sometimes been conducted in this State. I have a distinct recollection of a case somewhat similar to that referred to by the gentleman from Posey, where a section was inserted in a bill, otherwise unobjectionable, appropriating the sum of seventy-five thousand dollars for a private and local purpose. The bill had a general title, to which was added the words, 'and for other purposes.' The bill passed both branches of the Legislature, most probably without having been read through in either. It was discovered by the vigilance of Governor Noble, and sent back to the House in which it originated with his veto. On the question of its passage a second time it received but the single vote of the member by whom it was introduced. This and other cases to which reference might be made, shows the necessity of some measure to prevent their recurrence."

In the case of *Hobbs* v. *Gibson School Twp.* (1924), 195 Ind. 1, 144 N. E. 526, this court considered whether a statutory provision with reference to the professional qualifications of teachers was within a title reading:

"An act to classify and regulate the minimum wages of teachers in public schools."

In holding that part of the act relating to the training of teachers void as violating section 19 of Article 4 of the State Constitution, Ewbank, J., speaking for the court, said (p. 5) :

"It cannot be assumed that members of the legisislature who voted to pass, 'An act to classify and regulate the minimum wages of teachers' knew from the title that they were voting to enact that teachers must possess a number of qualifications they were not otherwise required to have, and that without those additional qualifications they should not be permitted to earn any wages at all."

If the language of the proviso were taken literally it would apply alike to all public school corporations in the state, though only a part of them are eligible to participate in the distribution of the Common School Relief Fund. But it has been suggested that this court could and should construe the proviso as applicable only to those school corporations which come within the purview of the other provisions of the act, under which interpretation the approval of contracts proposed to be entered into by trustees and school boards not participating in the relief fund would not be required. The suggested construction would not, however, solve the problem with which we are confronted. This state requires that teachers' contracts shall be uniform. §28-4303 Burns 1933, sec. 5996 Baldwin's 1934. Another proviso of section 3 of the act of 1933, not here under consideration, directs that no item of expense for teachers' salaries or transportation costs shall be considered in the distribution of the state fund unless it has been first recommended and approved by the Board of Department of Education. It thus appears that it is not necessary to submit such contracts to said board for approval in order to control

the amount of expenditures to be made therefor. It must be presumed, therefore, that the Legislature had some other objective in mind when it enacted the proviso which we are here considering. In practice, this could only mean that the purpose of this proviso was to give the Board of Department of Education control over the selection of teachers and school bus drivers in relief aid school corporations. Conceding that the General Assembly might have exacted, as the price of such aid, that the teachers and bus drivers in school corporations accepting the benefits of the fund should be selected or appointed by the state department, we can not believe that any such legislative intent is disclosed by the title of the act under consideration. Our doubt upon that subject is so strong as to lead us to the conviction that it was not so intended. Would a member of the General Assembly, about to vote on chapter 167, Acts of 1933, or, would a citizen, desiring to follow the course of proposed legislation, be advised by the title of said act that it contained provisions authorizing the Department of Education to name the school teachers and bus drivers in a considerable number of the school corporations of the state? We think not. The scope of the proviso is not indicated by the title.

An act for the support of the common schools of the state and for the apportionment and distribution of the money so raised does not suggest an unrelated provision which might have the effect of depriving local corporations of the right to say who should teach their schools and who should transport their pupils. It has been the policy of this state throughout its history to allow a full measure of local self government in respect to these matters. Any legislative act which would radically depart from that traditional policy and vest such authority in a centralized state agency should, by its title, indicate its purpose to the

citizen of average intelligence. While this court has adopted a very liberal policy with respect to the sufficiency of titles, there must be a limit to the extent to which such liberality will be extended.

Appellants contend that we should not consider the constitutionality of the proviso for the reason that appellees did not raise any issue in that regard by their pleadings. Appellants defended in the court below on the theory that there was no compliance with the terms of the proviso. We are not acquainted with any rule of practice that requires appellees to negative the constitutionality of said proviso in their complaints. Where a defense is based upon a statute it is not necessary that the question of the constitutionality of the statute be specifically raised by the pleadings, if the court's attention is directed to the fact that its validity is attacked, and a determination of the question is necessary to a decision of the case. 12 C. J., p. 785; *McCabe's Admx.* v. *Maysville & Big Sandy Ry. Co.* (1910), 136 Ky. 674, 124 S. W. 892.

The language of section 19 of Article 4 of the State Constitution does not make it necessary that the whole of chapter 167, Acts of 1933, be invalidated. We hold, therefore, that the last proviso of section 3 thereof is unconstitutional and void. This being true, the law did not require that appellees' contracts be submitted to and approved by the Board of Department of Education.

The judgment in each case is affirmed.

Tremain, J., absent.