TINDER, PROSECUTOR ATTORNEY, ET AL. *v.*
MUSIC OPERATING INC.

[No. 29,476.  Filed May 2, 1957.  Rehearing denied
June 27, 1957.]

34

*Asa J. Smith, Michael B. Reddington, John J. Dillon,* and *Andrew Jacobs,* all of Indianapolis, for appellants.

*John A. Royce* and *Howard P. Travis,* both of Indianaapolis, for appellee.

ACHOR, C. J.—This is an appeal from a permanent injunction issued against the appellants, restraining them from interfering with the installation or operation of appellee's pinball machines in the city of Indianapolis.

Appellee maintained its action upon the theory that pinball machines of the type owned by appellee, which granted only an immediate right of replay, are expressly excluded from the application of the so-called Hasbrook Law, Chapter 265 of the Acts of the Indiana General Assembly, 1955 (being §§10-2329—2336, Burns' 1956 Repl.), which act is concerned with the crime of gambling and provides penalty therefor. The exemption to the act, relied upon by appellee, is contained in Section 2, subsections 3 and 4 of the Act, and is italicized by us in the recital thereof, as follows:

> "(3) 'Professional gambling' means accepting or offering to accept, for profit, money, credits, deposits or other things of value risked in gambling, or any claims thereon or interest therein. Without limiting the generality of this definition, the following shall be included: pool-selling and bookmaking; maintaining slot machines, one-ball machines or variants thereof, *pinball machines which award anything other than an immediate right of replay,* roulette wheels, dice tables, or money or merchandise pushcards, punchboards, jars or spindles, in

any place accessible to the public, and conducting lotteries, gift enterprises, or policy or numbers games, or selling chances therein; and the following shall be presumed to be included: conducting any banking or percentage games played with cards, dice or counters, or accepting any fixed share of the stakes therein.

"(4) 'Gambling device' means any mechanism by the operation of which a right to money, credits, deposits or other things of value may be created, in return for a consideration, as the result of the operation of an element of chance; and mechanism which when operated for a consideration does not return the same value or thing of value for the same consideration upon each operation thereof. But *in the application of this definition an immediate right of replay mechanically conferred on players of pinball machines and similar amusement devices shall be presumed* to be without value." (our emphasis.) (§10-2330, *supra.*)

The issues were finally joined by appellants' answer to appellee's complaint and supplemental paragraph of complaint. But prior to the filing of said answer appellants Bayt and Mueller filed a motion to dismiss on the grounds that the statutory provision relied upon by appellee was unconstitutional. This motion was overruled by the court. Also, prior to the filing of the answer by appellants, a demurrer was filed by appellant Tinder and overruled by the court.

The errors assigned and urged by appellants in this appeal are as follows:

(1) The overruling of appellants' motion to dismiss.

(2) The overruling of appellants' demurrer.

(3) The overruling of appellants' motion for a new trial.

In support of their motion to dismiss, appellants contend that the above quoted sections of the act relied upon by appellee in its complaint were unconstitutional for the following reasons:

(1) That the exception in said act which permits the conferring of free replays on pinball machines is inconsistent with the general subject matter of the act, not expressed in the title.

(2) That the said provisions which except pinball machines that mechanically confer a right of immediate free replay from the gambling laws of the state constitutes a special law as to such provision.

(3) That said exception allowing replays on pinball machines is violative of Section 8, Article 15 of the Constitution of Indiana prohibiting lotteries.

The demurrer of appellant Tinder stated the following reasons as grounds therefor:

"1. That the Court has no jurisdiction of the persons of the defendants or the subject matter of this action.

"2. That the complaint does not state facts sufficient to constitute a cause of action."

The cause was submitted and the court later rendered a permanent injunction against the appellants as follows:

"IT IS THEREFORE CONSIDERED AND ADJUDGED by the Court that the defendants John Tinder, Prosecuting Attorney, his deputies, investigators, and assistants, Robert A. O'Neal, Sheriff of Marion County, his deputies, investigators, and assistants, and Frank A. Mueller, Chief of Police of the City of Indianapolis, and all members of the Police Department of the City of Indianapolis be and they are hereby perpetually enjoined from interfering with plaintiff's business and the business of all owners and lessees of pinball machines located in Marion County, Indiana, and especially in the business of leasing, maintaining, and operating pinball machines, and from arresting, coercing, or in any manner whatsoever intimidating the owners, operators, or employees of locations where said pinball machines are now located or may hereafter be located in Marion County,

Indiana, and from seizing, confiscating, or in any manner whatsoever taking into their possession the aforesaid pinball machines or interfering with the plaintiff or all owners and lessees of pinball machines in the conduct and operation of their business of leasing, distributing, and possessing pinball machines as above described in Marion County, Indiana."

We first consider appellants' contention that the operation of pinball machines constitutes a lottery within the meaning of Art. 15, §8, *supra,* and that the ownership and operation of such machines is unlawful regardless of the exceptions contained in the act. Article 15, §8, *supra,* provides: "No lottery shall be authorized; nor shall the sale of lottery tickets be allowed."

What is lottery? The courts of Indiana have placed no other interpretation on the word "lottery" than its commonly accepted meaning, defined in Webster's New International Dictionary, as follows: "A scheme for the distribution of prizes by lot or chance; esp., a scheme by which one or more prizes are distributed by chance among persons who have paid or promised a consideration for a chance to win them, . . . A game in which prizes are given from a pool to holders of cards matching others reserved for that purpose." Lotteries are a species of gaming, and, although lotteries are gambling, not all forms of gaming or gambling are lotteries. *State* v. *Village of Garden City* (1953), 74 Idaho 513, 265 P. 2d 328.

Appellant cites the fact that there are three essential elements to a lottery, namely, consideration, chance and prize, *State* v. *Village of Garden City, supra; State* v. *Coats* (1937), 158 Or. 102, 74 P. 2d 1120, 158 Or. 122, 132, 74 P. 2d 1102, and that all these elements are present in the operation of the pinball machines of appellee's. Appellant cites the fact that numerous cases from other

jurisdictions support the proposition that the operation of pinball machines may constitute a lottery.[1]

However, we submit that in none of the above cases is the operation of the machines analogous to those involved in this case. In a lottery the winning of a prize is dependent primarily, if not solely, upon chance. In none of said cases was the prize dependent upon the skill or manipulation of the player. This is a significant factor not contemplated in a lottery. However, in the operation of the machines with which this case is concerned, skill is a predominant factor in determining the award of a prize. These machines are equipped with "flippers," by which the player controls the play of each ball. In fact, the conferring of a prize (free play) is improbable unless the player can operate these flippers with a considerable degree of skill. This distinction is recognized in the case of *State* v. *Coats, supra,* in which the element of skill did not exist. In that case the court stated: ". . . If any substantial degree of skill or judgment is involved, it is not a lottery. . . ."

We next consider appellants' contention that the 1955 Hasbrook Law's exception of appellee's type of machines from the definition of "gambling devices" is class legislation in violation of Art. 1, §23,[2] and a special law in violation of Art. 4, §22, sub-sec. 2,[3] and §23,[4] of

1. *State* v. *Village of Garden City* (1953), 74 Idaho 513, 265 P. 2d 328; *State ex rel. Evans* v. *Brotherhood of Friends* (1952), 41 Wash. 2d 133, 247 P. 2d 787; *State* v. *Coats* (1937), 158 Ore. 102, 74 P. 2d 1120, 158 Ore. 122, 74 P. 2d 1102; *Westerhaus* v. *Cincinnati* (1956), 165 Ohio St. 327, 135 N. E. 2d 318.
2. "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." Art 1, §23.
3. "The General Assembly shall not pass local or special laws, in any of the following enumerated cases, that is to say:
    "(2) For the punishment of crimes and misdemeanors;" Art. 4, §22, sub. sec. 2.
4. "In all the cases enumerated in the preceding Section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State." Art. 4, §23.

the Constitution of Indiana. Appellants have cited numerous cases in support of their position.[5] However, in none of the cases cited by appellant in support of their position are the facts analogous to those here presented, nor does the reasoning of those cases require the result asserted by appellant.

In determining the validity of a classification, the court will, in every case, look behind the thing legislated upon and decide the issue on the basis of whether or not its purpose is reasonable and treats all members within the class alike. For example, in the case of *Schmitt, Supt.* v. *F. W. Cook Brewing Co.* (1918), 187 Ind. 623, 120 N. E. 19, 3 A. L. R. 270, the court held that Chapter 4 of the Acts of 1917, which prohibited the manufacture, sale, gift, advertisement or transportation of intoxicating liquors, was not void because it gave the right to registered pharmacists to deal in intoxicants for medicinary purposes. The decision was based upon the fact that a reasonable distinction inhered to the purposes or uses to which the intoxicating liquors were being put.

For like reason, the habitual criminal statute, Chapter 82 of the Acts of 1907, was held constitutional, though it gave unequal treatment to offenders who had committed the same crimes. The reason for the validity of the statute is obvious: A legitimate purpose is to be served in distinguishing between the recidivist and the ordinary offender. *Barr* v. *State* (1933), 205 Ind. 481, 187 N. E. 259.

Similarly this court has held that Chapter 255 of the

5. *State* v. *Wiggam* (1918), 187 Ind. 159, 118 N. E. 684; *Sperry & Hutchinson Co.* v. *State* (1919), 188 Ind. 173, 122 N. E. 584; *Fountain Park Co.* v. *Hensler* (1927), 199 Ind. 95, 155 N. E. 465; *Davis Construction Co.* v. *Board, etc.* (1921), 192 Ind. 144, 132 N. E. 629; *Armstrong* v. *State* (1908), 170 Ind. 188, 84 N. E. 3.

Acts of 1937 was not violative of the Constitution of Indiana in its classification of motor trucks on the ground that it exempted from taxation one and two-wheel trailers drawn by passenger vehicles, as distinguished from trucks. The classification had a relationship to highway hazards and all who fell within each classification were treated alike. *Eavey Company* v. *Department of State Treasury* (1939), 216 Ind. 255, 24 N. E. 2d 268.

We have heretofore stated the general rule with regard to the application of Article 1, §23, *supra,* as follows:

"The question of classification, under the privilege and immunities clause of the Indiana Constitution (Art. 1, §23), is primarily for the legislature and does not become a judicial question unless it clearly appears that the legislative classification is not based on substantial distinctions with reference to the subject-matter, or is manifestly unjust or unreasonable. . . ." *Phillips, et al.* v. *Officials of Valparaiso, etc., et al.* (1954), 233 Ind. 414, 421, 120 N. E. 2d 398.

Also, in determining whether or not a legislative classification is reasonable or "special" and, therefore, violative of the Constitution, every reasonable presumption must be indulged in favor of the constitutionality of a statute. *Heckler* v. *Conter* (1933), 206 Ind. 376, 187 N. E. 878.

When we adopt the above rules to the facts before us, we are confronted by the fact that although appellee's machines may have certain physical resemblances to so-called one-ball machines and metered free-play pinball machines which do not produce free play mechanically, we cannot say that it is unreasonable or arbitrary to distinguish between such machines and appellee's machines which give only a mechanically conferred immediate right of replay. Where the imme-

diate right of replay is mechanically conferred, then there is no necessity for the player to redeem the free games won into cash in order to exercise such right of replay, and the probability of his cashing in his winnings is thereby greatly diminished. Where free games must be redeemed in cash in order to replay, the enticement of the game may well become monetary. However, where the prize is in the form of an immediate right of replay mechanically conferred, it is much more probable that the "prize" will be utilized in the continued entertainment of the player. In the one case the incentive is unearned monetary gain. In the other it is entertainment. Thus the distinction between the operation and the two types of machines is related to public morals and welfare and is, therefore, substantial and reasonable and valid as related to the constitutional provisions above referred to.

We next consider appellants' contention that the act violates Article 4, § 19 of the Constitution of Indiana.[6] The act is entitled as "An Act Concerning the Crime of Gambling and Providing Penalties therefor." Appellants assert that this title to the act is not broad enough in that it does not mention the fact that it exempts this specific form of gambling from the penalties thereof. For this reason appellants assert that Section 2, subsections 3 and 4, which contain the exceptions to the act, should be stricken down as unconstitutional. In support of their position, appellants cite the cases of *Marion School Twp., etc.* v. *Smith* (1939), 215 Ind. 586, 21 N. E. 2d 412; *Wabash Railroad Co.* v. *Young* (1903), 162 Ind. 102, 69 N. E. 1003, 4 L. R. A. (N. S.) 1091. However,

---

6. "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." Art. 4, §19.

those cases are not decisive of the issue here presented. The Smith case, *supra*, involved Chapter 167 of the Acts of 1933, which was entitled as "An Act Providing for the levy of a tax to support common schools of the state, . . ." but had in it a proviso invalidating teachers contracts not approved by a board or department of education. The Wabash case, *supra*, involved page 315 of the Acts of 1889, which was entitled as "An Act for the protection of discharged employees to prevent black-listing." Insofar as it applied to employees not discharged, but who had voluntarily left the master's employment, it was held void because the latter provision was not embraced in the title.

It is difficult to see where an analogy can be drawn from the above decisions to the case at bar. The title to the act here challenged by appellant is broader than the act itself because the act is entitled "An act concerning the Crime of Gambling, . . ." but the validity of the act is challenged because it does not cover all gambling devices. This being the case, the provisions which are objected to by the appellants are not to be condemned under Art. 4, §19, *supra*, for it has long been held that it is not an objection that the title of a legislative act is too broad or general, or that it comprehends more than the act legislates upon. *Wayne Township* v. *Brown* (1933), 205 Ind. 437, 186 N. E. 841; *Ule* v. *State* (1935), 208 Ind. 255, 194 N. E. 140, 101 A. L. R. 903.

The title of the act sufficiently expressed the subject-matter thereof, to give reasonable notice to persons interested in the crime of gambling to inquire into the body of the act. The title did not need to be an abstract of the entire contents of the act. *Albert* v. *Milk Control Board of Indiana* (1936), 210 Ind. 283, 200 N. E. 688.

We next consider appellants' argument that the trial court had no jurisdiction to thus control the official action of the prosecuting attorney, who is a judicial officer. While it is true that a prosecuting attorney is a judicial officer in the sense that he is vested with broad discretion as to the prosecution of criminal actions,[7] however, this fact does not mean that courts are without jurisdiction in all cases to issue restraining orders where property rights are invaded by his acts. As was said in *State ex rel. Feeney* v. *Superior Court of Marion County* (1934), 206 Ind. 78, 79, 188 N. E. 486, 487; ". . . where the injunction for the protection of property rights incidentally involves restraining and enjoining criminal prosecutions or the enforcement of a criminal statute, this fact will not destroy the jurisdiction." The rule has been consistently reiterated in every case where the question has arisen since the cases of *State ex rel. Fry* v. *Superior Court of Lake County* (1933), 205 Ind. 355, 186 N. E. 310; *State ex rel. Egan* v. *Superior Court of Lake Co.* (1937), 211 Ind. 303, 6 N. E. 2d 945; *Dept. of Financial Institutions* v. *Holt, etc.* (1952), 231 Ind. 293, 108 N. E. 2d 629.

The test then, as to the court's jurisdiction to enjoin the prosecutor in his judicial function, is determined by (1) whether the primary purpose and effect of the proceedings is to enjoin criminal prosecutions by the prosecutor, with property rights being a secondary consideration, or (2) whether the primary purpose and effect thereof is the protection of property rights, with restraint of prosecution being only incidentally involved.

Appellants' decision to seize all pinball machines owned and operated by appellee in the City of Indianap-

---

7. *State ex rel. Freed* v. *Martin Circuit Court* (1938), 214 Ind. 152, 14 N. E. 2d 910; *State ex rel. Egan* v. *Superior Court of Lake Co.* (1937), 211 Ind. 303, 6 N. E. 2d 945; *Lynn* v. *State* (1934), 207 Ind. 393, 193 N. E. 380.

olis is apparently based on an assumption that that portion of the act which exempts such machines from the penal provisions thereof, is unconstitutional; that said machines are *mala in se* and therefore that appellee has no assertible property right therein. However, for reasons stated in this opinion, we consider the act to be constitutional as against the grounds herein asserted. Therefore, appellee has a legitimate property right in the ownership and operation of said machines to which he is entitled to protection unless it is further made to appear that said machines are not of the type exempted by the act and that, contrary to the express presumption of the act, the free games awarded by such machines were in specific instances exchanged for some other "thing of value." There is no allegation to this effect in the record.

Under the law and facts thus presented, we cannot say that the trial court was without jurisdiction to hear and determine appellee's right to injunctive relief against seizure of his property by appellants. The injunction does not enjoin the prosecutor from enforcing the law in specific instances where a crime may have been committed. It does enjoin him from making a general seizure of lawful property, the use of which is expressly "presumed" by statute to be lawful.

We next consider appellants' contention that the complaint did not state facts sufficient to constitute a cause of action, which issue was raised by appellants' demurrer. In support of this contention, appellants contend that the appellee was not entitled to ask for the equitable relief which he sought for the reason first, that appellee came into court with unclean hands and, secondly, because, on the facts of the record, his business, for which he seeks protection, is unlawful. Both contentions involve substantially the same issue. In support of these

contentions appellants assert that pinball machines are slot machines within the definition of the Acts of the General Assembly of 1935, ch. 321, pp. 1539-1540 (being §§10-2326-2328, Burns' 1956 Repl.), and that said act was not repealed directly or indirectly by implication by the so-called Hasbrook Act of 1955, and is in full force and effect.

In support of their contention that the 1935 Act was not repealed by the 1955 Act, appellants cite the fact that neither the title, the enacting clause, nor the body of the 1955 Act makes any reference to the repeal of any previous legislation. In further support of this position, appellants cite the fact that repeals by implication are not favored, that a statute will be considered impliedly repealed only where and to the extent that irreconcilable conflict exists. The law on this subject by implication has been stated as follows:

". . . In 1 Lewis, Sutherland Statutory Construction §247, it is said: 'An implied repeal results from some enactment the terms and necessary operation of which cannot be harmonized with the terms and necessary effect of an earlier act. In such case the later law prevails as the last expression of the legislative will; therefore the former law is constructively repealed, since it cannot be supposed that the law-making power intends to enact or continue in force laws which are contradictions. The repugnancy being ascertained, the later act in date or position has full force, and displaces by repeal whatever in the precedent law is inconsistent with it.' " *Newbauer* v. *State* (1928), 200 Ind. 118, 121, 161 N. E. 826, 827.

It therefore becomes necessary for us to examine the two statutes as they relate to the operation of pinball machines. Section 2 of Ch. 321 of the anti-slot machine act, *supra*, among other things, provides as follows:

"Any machine, apparatus or device is a slot machine or device within the provisions of this act if

it is one that is adapted, . . . for use in such a way that, as a result of the insertion of any piece of money or coin or other object such machine or device is caused to operate or may be operated, and *by reason of any element of chance or of other outcome of such operation unpredictable by him,* the user may receive or become entitled to receive any piece of money, credit, allowance or *thing of value, . . . or the user may secure additional chances or rights to use* such machine, apparatus or device, . . ." (Our italics.) §10-2327, Burns' 1956 Repl. (Acts 1935, Ch. 321, §2, p. 1539.)

The pertinent parts of the 1955 Act have heretofore been set out. We find that the provisions of the latter act specifically refer to pinball machines, which were not mentioned in the earlier act, and that, by express terms, those provisions exclude pinball machines, which machines award only free games mechanically conferred, from the general classification of gambling devices, which are, otherwise, made illegal by both acts. The latter act further provides that the free games, so conferred, shall be presumed to be without value. These provisions of the two acts are in express and direct conflict with each other. Therefore, the 1955 Act, which was a later expression of public policy by the legislature, must be considered to have repealed by implication that part of the 1935 Act, which is in conflict with the 1955 Act.

We conclude, therefore, that the operation of appellee's pinball machines is presumed to be legal under the 1955 Act and that said act repealed those parts of the 1935 Act which were in conflict with it. Therefore, appellants' contention that appellee's complaint did not state facts sufficient to constitute a cause of action is not well founded.

We next consider appellants' contention that the court erred in overruling their motion for a new trial in which

appellants asserted that: (1) The decision of the court was not sustained by sufficient evidence, and (2) is contrary to law. Essentially the same issue is presented by each of the above grounds. Therefore, they will be treated conjunctively.

In order to sustain the judgment granting injunctive relief, it was incumbent upon appellee to establish the following facts: (1) The anticipated or actual violation of a right which, if permitted, (2) would result in a substantial and irreparable injury, for which there would be no adequate remedy at law. 43 C. J. S. 435-436.

We will consider the second and less controversial aspect of the case first. There is no controversy as to appellants having seized two of appellee's pinball machines and "publicly" stating "their determined intention to force all of said pinball machines out of Marion County and the City of Indianapolis." And there is no question but what such action would result in irreparable injury to appellee's business, for which it would have no adequate remedy at law.

Therefore, the remaining question is: To what extent, if at all, did appellee have a right to operate his pinball machine business without interference from appellants' law enforcement officers? It is appellee's contention that the operation of pinball machines of the type leased, sold and distributed by appellee, are absolutely legal and, therefore, that the facts above stated, are sufficient to sustain the decree of injunction issued by the trial court. On the other hand, appellants contend that the ownership or maintaining of such machines is a violation of the criminal law of the state *per se,* and that appellee is entitled to no protection whatever against interference to their ownership or operation by law enforcement officers.

We have heretofore stated that the operation of such machines does not constitute a lottery, made illegal by the constitution, and that the 1935 Act, as related to the operation of this particular type of pinball machines, was repealed by reason of the conflicting provisions of the 1955 Act. Our question then is: To what extent is the operation of such machines legalized under the 1955 Act? Appellants call particular attention to that provision contained in Section 2, sub-section (4) of the Acts of 1955 (being §10-2330, Burns' 1956 Repl., *supra*), as follows: ". . . *But in the application of this definition an immediate right of replay mechanically conferred on players of pinball machines and similar amusement devices shall be presumed to be without value.*" (Our emphasis.)

It is the contention of appellants that, except for said portion above quoted, the pinball machines owned and operated by appellee are a gambling device within the definition of the act, and that said provision of the act is void and of no effect for the reason that the right of replay of a commercial amusement device is a thing of value, of which fact the court must take judicial knowledge. Therefore, appellants contend that the presumption which the statute purports to create is, in fact, void and without effect. In support of this contention appellants cite numerous authorities which have held that the "right of free play" to a pinball machine is, in fact, a "thing of value."[8]

We therefore proceed to consider the statute in the light of this contention. It is an elemental rule of statu-

8.  *Kraus* v. *Cleveland* (1939), 135 Ohio St. 43, 19 N. E. 2d 159; *State* v. *Abbott* (1940), 218 N. C. 470, 11 S. E. 2d 539; *Alexander* v. *Martin, Sheriff* (1939), 192 S. C. 176, 6 S. E. 2d 29; *Giomi et al.* v. *Chase et al.* (1942), 47 N. Mex. 22, 132 P. 2d 715, 24 Am. Jur. 423, Anno. 38 A. L. R. 73, Supp. 81 A. L. R. 177, 26 Virginia Law Review 955.

tory construction that a single statutory provision cannot be construed standing alone. It must be construed in the light of the entire act to which it applies. *Department of Treasury* v. *Reinking* (1941), 109 Ind. App. 63, 32 N. E. 2d 741; *McKee* v. *Hasler* (1951), 229 Ind. 437, 98 N. E. 2d 657.

Furthermore, the rule is firmly established that, in construing an act, if it is susceptible to a reasonable and intelligible construction, it is the duty of the court to so construe it as to give effect and validity to each provision thereof. This rule which this court has adopted, regarding the construction of statutes, has been stated as follows: ". . . If a statute is susceptible of a reasonable construction, it will be given that construction and upheld, rather than a construction which would make it invalid. . . ." *Shideler, Auditor* v. *Martin* (1922), 192 Ind. 574, 578, 136 N. E. 1, 2, 137 N. E. 2d 528; *Dept. of Public Welfare of Allen County* v. *Potthoff* (1942), 220 Ind. 574, 44 N. E. 2d 494; *Fairchild, Prosecuting Atty., etc.* v. *Schanke et al.* (1953), 232 Ind. 480, 113 N. E. 2d 159.

Stripped of legal technicalities and rhetorical refinement, we believe the act reveals a clear legislative intent that the term "gambling device," as defined therein, should not apply to pinball machines in which an award, or prize, is limited to "an immediate right of replay mechanically conferred." To accomplish this purpose, the legislature stated that such ". . . right of replay . . . shall be presumed to be without value." (§10-2330 (4), *supra*.) By so stating, it seems clear that the legislature intended to remove such machines presumptively from the penal provisions of both the 1935 and 1955 Acts. Under the statute, so construed, such machines so operated could not be considered "gambling devices," since such devices must confer

upon the operator a chance of gaining something of value. *Kraus* v. *Cleveland* (1939), 135 Ohio St. 43, 19 N. E. 2d 159. In other words, taking the act as a whole, we believe it can reasonably be construed, to express legislative intent, that so long as pinball machines of the type here in question are operated in such a manner that the player receives no more than a right of replay mechanically conferred, they are not to be treated as are other "gambling devices," nor are persons maintaining them to be considered as "professional" gamblers subject to the penal provisions of said act. We believe that this is a reasonable construction of the act and that appellee's machines, if so operated, were not subject to seizure by appellants. If, on the other hand, said machines were so operated that an "immediate right of replay," although "mechanically conferred on players," was, in fact, exchanged by such players for cash or other things of value, then the presumption of the act which excluded the operations of such machines from the penal provisions disappears in the light of the facts. See: *Morris* v. *Chicago M., St. P. & Pac. R. Co.* (1939), 1 Wash. 2d 587, 97 P. 2d 119, 100 P. 2d 19.

In other words, we construe the statute to mean that if such right of replay, presumed by the Acts of 1955 not to be "a thing of value," was, in fact, "exchanged for any money, credit, allowance or thing of value," as provided in the 1935 Acts, then such operation of said machines became illegal under the terms of both acts.

We now, therefore, examine the evidence to determine whether, under the law as stated, it is sufficient to sustain the injunction as decreed by the court. We find that there is no evidence in the record that there was any exchange of such free games for money or other things of value. Appellee's witness testified that, "If anybody ever paid off anything other than

54

free games we instruct them we are taking the machine out." Appellants submitted no evidence upon this issue but now assert that it is common knowledge, without necessity of proof, that the free games which the machines award are in common practice perverted to gambling purposes by exchanging such right of replay for money or other things of value, as was stated by the court in the cases of *People* v. *One Mechanical Device or Machine, etc.* (1956), 9 Ill. App. 2d 38, 132 N. E. 2d 338, and *Miller* v. *Commonwealth* (1939), 172 Va. 639, 2 S. E. 2d 343.

However, as heretofore stated, there is no evidence in the record that such an exchange was actually practiced in connection with the machines seized or that such practice is common in Marion County or the city of Indianapolis. Certainly the practice is not of such common knowledge that this court can take judicial knowledge of such a fact.

Therefore, on the basis of the record before us and the law as above stated, we conclude that there was sufficient evidence to sustain the decree of the court to the extent that it enjoined the appellants from interfering with appellee's businss of leasing, maintaining or operating pinball machines of the type seized by appellants, to the extent and so long as the right of replay conferred by such machines is not exchanged for some thing of value.

We therefore examine the decree of injunction to determine whether it conformed to the law and evidence as above stated. We conclude that the injunction was lawful to the extent that it enjoined the seizure of appellee's slot machines so long as said machines were operated in the manner evidenced by the record. However, recognizing the fact that maintenance of such machines is made legal only on the basis of the

statutory *presumption* that the free games awarded were "without value" and that such presumption as to value might well disappear in the light of the facts which might be presented in another particular case, we conclude that the injunction, as issued, is contrary to law to the extent that it attempts to *unconditionally* and *perpetually* enjoin appellants from interfering with or intimidating the owners, lessees, operators or employees of locations where such pinball machines are located, and from seizing, confiscating or taking possession of such pinball machines.

During the pendency of this case, sub-section "(4)" of Section 2 of the Acts of 1955 (§10-2330, *supra*) was amended by House Bill 128, which added the italicized words to the provision of the 1955 Act, as follows: ". . . Provided, That in the application of this definition an immediate *and unrecorded* right to replay mechanically conferred on players of pinball machines and similar amusement devices shall be presumed to be without value." (Our italics.)

It is suggested that, by reason of this amendment, the question presented by the case before us may be moot. However, it does not appear from the record that the right of replay was recorded on the machines under consideration in the case now before us. Obviously the purpose of the amendment was to further limit the type of pinball machines excluded from the penal provisions of the act. It seems apparent that it would be much more improbable that *unrecorded* free games might be exchanged for money or other things of value, which exchange is the test of legality of the use of such machines within the provisions of both the 1955 and the 1957 Acts. Therefore, the 1957 Act does not make moot the issues involved in this case.

The decree herein is affirmed to the extent that it en-

joins appellants from seizing or interfering with the pinball machines of the appellee. The remaining portion of the decree is reversed. And the court is ordered to amend its decree to provide that the injunction be perpetual so long as such machines are and continue to be of the type specifically exempted by the statute and the free games conferred by such machines are not in fact exchanged for money or other things of value, as more fully stated in this opinion.

Judgment is therefore affirmed in part, reversed in part and ordered amended in part.

Bobbitt, Emmert and Landis, JJ., concur.

Arterburn, J., dissents with opinion.

### DISSENTING OPINION

ARTERBURN, J.—I dissent from the majority opinion because I do not think that the equity and civil side of a court should assume to take over and control the criminal side, nor the discretion of the executive and law enforcement branch of our government. This is an action brought against the prosecuting attorney, the sheriff, chief of police, and others constituting the law enforcement arm of the executive branch of our government. The main objective of the action, it will have to be admitted, is to enjoin officials of this branch of the government from exercising their discretionary powers in enforcing what they believe to be violations of the criminal law, namely, gambling. Under American criminal jurisprudence a defendant in a criminal case is given the widest and most liberal opportunity to clear himself and prove himself innocent, with rights against self-incrimination, with rights to a jury trial, and with the presumption of innocence. For that reason the threatened violation of a criminal law will not, for that purpose alone, be enjoined and thus deprive a defendant of many of his

constitutional safeguards. 43 C. J. S., Injunctions, §150, p. 760; 43 C. J. S., Injunctions, §156, pp. 768, 771.

Likewise, equity and the civil side of a court should not interfere with the criminal law enforcement functions of the government, particularly where officials in that branch are exercising their discretionary powers. The functions of these departments must be kept separate under the constitution. Too often, we judges are prone to substitute our personal judgment for that of officials in other branches of the government.

The discretionary power of law enforcement officials is vital to the public interest. This is particularly true with reference to the judgment exercised by the prosecuting attorney. His official discretion in his field is as independent as that of a court. A judge may not direct a prosecuting attorney to approve or disapprove an affidavit that is to be the basis of a criminal prosecution. *State ex rel. Freed* v. *Martin Circuit Court* (1938), 214 Ind. 152, 14 N. E. 2d 910; *State ex rel. Spencer* v. *Criminal Court, Marion Co.* (1938), 214 Ind. 551, 15 N. E. 2d 1020, 16 N. E. 2d 888.

The appellee contends in this case that it is enjoining the appellants from doing acts *outside* their official power or capacity; however, it should be noticed that they are not sued in their individual capacity but in each case are sued in their official capacity as prosecuting attorney, sheriff, chief of police, etcetera. The permanent injunction is against them in their official capacity.

The allegations in this case are in substance that the plaintiff-appellee corporation is the owner of certain pinball machines, and that it conducts a lawful business of leasing and otherwise locating these machines so as to receive an income therefrom. The appellee states that the appellants intend to and will, unless restrained,

"arrest the owners and operators of locations wherein said pinball machines are located," and that the appellants will seize and destroy the machines belonging to the appellee. That all these acts will be done "for the purpose of intimidating, coercing and forcing said owners and operators of locations wherein such pinball machines are located to refuse to permit the continued operation of such machines in their premises."

We may add at this point that these are consequences which normally flow from any threatened prosecutions, or prosecutions for law violations in such cases.

The injunction decreed is all inclusive and leaves the appellee immune from any prosecutions or seizures of the machines even if they are used as gambling devices in the future.

The trial court entered a judgment perpetually enjoining the appellee "from interfering with plaintiff's business and the business of all owners and lessees of pinball machines located in Marion County, Indiana, and ... from arresting, coercing, or in any manner whatsoever intimidating the owners, operators, or employees of locations where said pinball machines are now located, or may be located, in Marion County, Indiana, and from seizing, confiscating, or in any manner whatsoever taking into their possession the aforesaid pinball machines or interfering with the plaintiff" in the conduct of leasing and distributing the pinball machines.

The evidence in support of this judgment is meager and not substantial. It is largely concerned with the mechanical operation of a pinball machine, and how appellee conducts its business. There is very little evidence concerning the actual use of the machines. The testimony is that two of the machines were seized by the sheriff's office, and the president of the appellee cor-

poration says he does not know what was being done with the machines when they were seized (whether used for gambling or not), and that he has never talked with the sheriff about the operation of these machines. In other words, neither the allegations of facts in the complaint nor the evidence excludes or negatives these machines being used for gambling purposes at the time they were seized. A pleading is construed most strongly against the pleader. The burden is on the appellee in such a case to show the use of the machines was innocent and legal at the time. The burden is not upon the prosecuting and law enforcement officials to make out a criminal violation in a civil case such as this. Yet, that is the tenor of the reasoning in the majority opinion. *State ex rel. Board, etc.* v. *Goodman* (1951), 230 Ind. 38, 101 N. E. 2d 421; *Pittsburgh, etc., R. Co.* v. *Town of Crothersville* (1902), 159 Ind. 330, 64 N. E. 914; *Yoder* v. *Cole, Trustee* (1930), 91 Ind. App. 630, 172 N. E. 545.

So far as we know, the sheriff had a legal right to seize the machines or devices if he had probable cause to believe that they were being used as gambling devices, and at places frequented by children at the time.

Acts 1947, ch. 188, §1, p. 624, being §9-604 and Acts 1907, ch. 290, §2, p. 661, being §9-605 Burns' 1956 Replacement authorize the seizure of devices used for gambling by the sheriff. Before the machines can be destroyed, the sheriff must get a court order for that purpose, and the owner must be notified. There is no allegation of fact in the petition in this case, nor proof that the sheriff is doing anything but following legal procedure. As a last resort, the appellee had a remedy by replevin if it thought the seizure in the particular case unlawful. The appellee has an adequate remedy under the law.

The only testimony that links the prosecuting attorney

with this case is his sole statement in the record that he believed "they [pinball machines] violated the law in their then use." This was his privilege so to believe without being enjoined. There was nothing unlawful or improper in these remarks. No court has jurisdiction to restrain the expressions or legal opinions of a prosecuting attorney even though they may intimidate or create fear of prosecution in others.

The majority opinion concedes the strong possibility that the pinball machines could be used as gambling devices in particular cases, but states "the injunction was lawful to the extent that . . . said machines were operated in the manner *evidenced by the record.*" (Our italics.) Our point is that there is an absence of any evidence in the record as to how the seized machines were actually operated at the time, or how any other machines were operated at the time concerning which threats of prosecution or seizure were made. None of the operators where the machines were located took the stand or testified as to the circumstances surrounding the particular operations, whether legal or illegal in the particular cases specified, as a basis for relief. The necessity of such specific proof is elemental in such cases.

There is a failure of proof in this case. For aught that appears in the record, the machines seized were being used as gambling devices.

The cases cited in the majority opinion do not lend support to the proposition that equitable actions may be brought against prosecuting and law enforcement officials as in this case to protect property rights. *State ex rel. Fry* v. *Superior Court Lake County* (1933), 205 Ind. 355, 186 N. E. 310; *State ex rel. Feeney* v. *Superior Court* (1934), 206 Ind. 78, 188 N. E. 486; *State ex rel. Egan* v. *Superior Court of Lake Co.* (1937), 211 Ind. 303, 6 N. E. 2d 945; *Dept. Financial Institutions* v. *Holt, etc.* (1952), 231 Ind. 293, 108 N. E. 2d 629.

An examination of these cases shows that in all of them, injunctive relief was denied those who attempted to restrain the prosecuting and law enforcement officials. In the case of *Dept. Financial Institutions* v. *Holt, supra,* the relief was granted, but the evidence showed that there was no criminal prosecution pending or threatened *and the prosecuting attorney was not a party thereto.* The action was brought primarily to determine the constitutionality of the regulatory powers of the Department of Financial Institutions over installment sales.

On the other hand, in the case of *State ex rel. Egan* v. *Superior Court of Lake Co., supra,* the facts were similar to those here. A plaintiff sought to enjoin the prosecuting attorney and the chief law enforcement officers of Lake County, including the sheriff, mayor, and chief of police of the City of Hammond, from interfering with the operations of a dog track which the plaintiff alleged and claimed did not violate the laws of the State of Indiana in any way. The prosecuting attorney and law enforcement officials claimed it was used as a gambling device. As in this case, it was alleged that the prosecutor and law enforcement officials threatened to arrest, prosecute, and interfere with the plaintiff's business, and they claimed that they had a large financial investment in the track, and would suffer great property loss as a result. Judge Treanor in that case (211 Ind. 303 on pp. 308, 309) speaking for the court which refused to grant a writ of prohibition, made the following statement:

> "The complaint for injunctive relief in the instant case, and the writ issued thereon, disclose that the main relief sought, and obtained by the temporary writ, was protection from threatened criminal prosecution. . . .
> "The relator and other law enforcement officers of Lake County are under sworn duty to enforce the

criminal laws of the State of Indiana and in the performance of that duty are protected by law in the exercise of their discretion. It is for them, in the first instance, to decide whether plaintiffs are violating any criminal law of the State of Indiana. This discretionary power is too vital to the interest of public order to be subjected to restraint by the courts. This power is possessed and exercised as a part of the independent co-ordinate power of the executive branch of the state government and for that reason is not subject to interference by the judicial branch of the government.

"The Superior Court of Lake County has no power to judicially determine whether the proposed plan of operation of plaintiffs below constitutes a violation of the criminal law of the state and to enjoin relator, or other enforcement officers, from performing their duties as law enforcement officers pending the determination of the criminality of the plan of operation."

To me, this case is on all fours with the Egan case. A writ of prohibition was issued against the trial court entertaining jurisdiction of the case. The prosecuting attorney in that case had no burden of introducing any evidence to prove a criminal violation. Property rights were involved there but the main objective and purpose of that case, as in this, was to impede and restrain the discretionary actions of the law enforcement officials in carrying out what they felt to be their official duties. We know that the injunction in this case was brought by the operators and owners of pinball machines to impede and restrain the prosecuting attorney, the sheriff, and police officers, from interfering with what such officials thought were law violations and the use of the machines as gambling device. The law provides the criminal courts as a place for the determination of whether or not there is a violation of the criminal laws. These questions should be settled there. In my opinion the appellants were entitled to a writ of prohibition, as in the Egan

Case, prohibiting the trial court from entertaining jurisdiction of this case in the first instance.

It is said that the equity side of the court will step over into the criminal jurisdiction of a court if property rights are involved and criminal violations are merely incidental. One may ask, what threatened criminal law prosecution does not involve either some form of property right or personal privilege? The latter right which includes that of personal liberty is far more important than a property right. If equity may invade the criminal domain under the guise of protecting property, then it may do so with greater reason under the guise of protecting personal liberty. Carried out logically, every criminal prosecution could be first adjudicated in equity by asking for an injunction against law enforcement officials.

The judgment should be reversed with direction to enter judgment for the appellants.

NOTE.—Reported in 142 N. E. 2d 610.