STATE of Indiana and Timothy J. Cain,
Prosecuting Attorney of LaGrange
County, Appellants–Defendants,

v.

John MAILLARD, Appellee–Plaintiff.

No. 44A03–9706–CV–198.

Court of Appeals of Indiana.

June 12, 1998.

---

Jeffrey A. Modisett, Attorney General, Carol A. Nemeth, Deputy Attorney General, Indianapolis, for Appellants–Defendants.

Bill D. Eberhard, Jr., Steele, Ulmschneider, & Eberhard, LaGrange, for Appellee–Plaintiff.

## OPINION

HOFFMAN, Judge.

The State of Indiana appeals a trial court determination that "'Pot O Silver' machines owned by Plaintiff are not gambling devices as defined by Indiana Code § 35–45–5–1." The facts relevant to review are recited below.

In April 1996, Maillard's late wife, Jill, instituted proceedings for a declaratory judgment as to whether "quarter slide" or "quarter pusher" machines she owned constituted gambling devices pursuant to Indiana's criminal code. Jill placed the machines in convenience stores within LaGrange County. Sometime prior to April, the Prosecuting Attorney for LaGrange County, Timothy J. Cain, informed Jill that the machines had to be removed from the stores on or before March 19, 1996. Jill was advised that her failure to comply would subject her to prosecution under the Indiana statutes pertaining to gambling. Jill complied with the order but instituted these proceedings for a declaratory judgment.

In June 1996, a hearing was held. A demonstration of the operation of the machine was videotaped. The tape is included in the record of proceedings. The machines owned by Maillard are approximately five feet tall encased in fibreboard or plywood boxes. The upper half of the front of the machine is glass allowing the player to observe and control operation of the game.

To operate a machine, a player chooses a point of entry and inserts one or more quarters after viewing the location of various chutes and the location of the quarters inside of the machine. As a coin is inserted, revolving wheels begin to turn at a constant speed. Dots of different colors placed on the wheels correspond to dots on four short chutes approximately two inches deep. After rolling down the first chute, the coin passes to a wheel and will drop into the short chute with the color which corresponds to the color on the wheel. The wheels drop the coin onto a tray that moves forward and backward at a constant speed.

At any time during play, an operator can stop the tray from moving back and forth by

pressing a "skill button." Movement of the tray is stopped for as long as the button is depressed. Timing, selection of the initial chute, and use of the stop mechanism allow a player to manipulate placement of the coins.

The moving tray can force quarters over the edge of the top tray onto a lower, stationary shelf. As quarters drop to the bottom shelf, they may push the existing quarters which may allow them to fall into an area for retrieval by the player or onto the side where they are retained by the machine. Additionally, for each coin placed in the machine, the machine dispenses a ticket which can be redeemed for a twenty-five cent item such as a comb.

At trial, Maillard presented expert witness testimony that the machine always gives a ticket redeemable for a quarter item. The machine shuts down if the ticket portion is inoperable. A player's skill can determine the amount of quarters which are returned. The expert likened the machine to "skee ball" and "crane" machines placed in children's arcades.

At the conclusion of the hearing, the matter was taken under advisement. In December 1996, the trial court allowed John Maillard to be substituted as the plaintiff after the death of Jill.

On February 28, 1997, the trial court issued findings of fact and conclusions of law. The order determined the method of operation of the machines, which is substantially in accordance with the facts set out above. Also, in relevant part, the trial court concluded:

2. Indiana Code § 35-45-5-1 states: 'Gambling' means risking money or other property for gain, contingent in whole or in part upon lot, chance, or the operation of a gambling device; but it does not include participating in:

(1) bona fide contests of skill, speed, strength, or endurance in which awards are made only to entrants or the owners of entries ...

3. In *Tinder v. Music Operating, Inc.*, 237 Ind. 33, 142 N.E.2d 610 (1957), the Indiana Supreme Court held that a device that awarded a prize by chance was a gambling machine. Activity, however, that required substantial skill and judgment was determined not to be gambling. 142 N.E.2d at 615.

4. Successful operation of a 'Pot O Silver' machine requires more than an element of skill and is not determined primarily by chance. Hence, Plaintiff's 'Pot O Silver' machine fails to be a gambling device under the rule of *Lashbrook v. State*, 550 N.E.2d 772 (Ind.App.1990).

5. A device requiring skill and judgment to be successfully operated is not a gambling machine under Indiana Code § 35-45-5-1.

### Judgment

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgment is rendered in favor of Plaintiff and against Defendant. The 'Pot O Silver' machines owned by Plaintiff are not gambling devices as defined by Indiana Code § 35-45-5-1.

This appeal ensued.

The State and Cain, as prosecutor for LaGrange County, present one issue for review: whether the trial court erred in determining that the machines do not constitute gambling devices in light of the evidence that the machines do not return the same payoff for the same consideration every turn.

In the present case, the record does not reflect that either party requested the trial court to enter specific findings of fact pursuant to Ind.Trial Rule 52. Instead, the trial court allowed the parties to submit proposed findings and conclusions, and then entered findings and conclusions on its own motion. In such a case, a general finding or judgment will control as to issues upon which the trial court has not expressly found, and special findings will control only as to those issues which they cover. *In re Marriage of Loeb*, 614 N.E.2d 954, 956 (Ind.Ct.App.1993). Special findings will be reversed on appeal only if they are clearly erroneous. *Id.* The trial court's factual findings will not be found to be clearly erroneous unless the evidence contains no facts or reasonable inferences supporting the findings. *Id.* In determining

whether the trial court's findings are clearly erroneous, we will not reweigh the evidence nor determine the credibility of the witnesses and will consider only the evidence on record which supports the judgment and the reasonable inferences which can be drawn from that evidence. *Id.*

The State argued at the hearing, and now on appeal, that the machines violate the subsection of the gambling statute which defines gambling devices.

IND. CODE § 35–45–5–1 (1993 Ed.) provides in pertinent part:

'Gambling device' means:

.    .    .    .    .

(2) a mechanism that, when operated for a consideration, does not return the same value or property for the same consideration upon each operation[.] . . .

The State recognizes that the machine always dispenses a ticket for each quarter placed in the machine. The ticket is redeemable for a twenty-five cent item. However, the State asserts that the return of coins in various amounts, including zero, violates paragraph two of the gambling device definition.

In support of the trial court's decision, Maillard directs this Court to the portion of the statute which defines gambling:

'Gambling' means risking money or other property for gain, contingent in whole or in part upon lot, chance, or the operation of a gambling device; but it does not include participating in:

(1) bona fide contests of skill, speed, strength, or endurance in which awards are made only to entrants or the owners of entries[.] . . .

IND. CODE § 35–45–5–1.

Maillard focuses upon the exclusion of "bona fide contests of skill" as not constituting "gambling." According to Maillard, it would defy logic for the machines to constitute gambling devices, yet the operators using them not be engaged in gambling because of the "contests of skill" exemption.

The trial court's order sidesteps the question whether the machines violate the "gambling device" portion of the gambling statute.

Instead the trial court, as urged by Maillard, focused upon the definition of gambling and then applied that definition to conclude that the machines do not constitute gambling devices.

■ Our primary task in construing a statute is to give effect to the intent of the legislature. *Ashlin Transp. Services, Inc. v. Indiana Unemployment Ins. Bd.,* 637 N.E.2d 162, 166 (Ind.Ct.App.1994). A reviewing court is duty bound to construe a statute to give effect and validity to each provision if the statute is susceptible to reasonable and intelligible construction. *Sullivan v. Day,* 681 N.E.2d 713, 717 (Ind.1997) (citing *Tinder v. Music Operating, Inc.,* 237 Ind. 33, 52, 142 N.E.2d 610, 620 (1957)). A statute is examined as a whole, and while the language itself is analyzed, a reviewing court will refrain from overemphasizing a strict literal or selective reading of individual words. *Id.* If the language of the statute is clear and unambiguous, it is not subject to judicial interpretation. *Albright v. Pyle,* 637 N.E.2d 1360, 1363–64 (Ind.Ct.App.1994). We look to the plain, ordinary meaning of the words and phrases in a statute to discern the legislative intent and presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policies and goals. *Ashlin Transp. Services,* 637 N.E.2d at 166.

Here, there is no blatant ambiguity in IND. CODE § 35–45–5–1. The statute clearly defines "gambling" and "gambling devices." It may be presumed that the legislature's ban of "gambling devices" could be more stringent than the prohibition against engaging in gambling activity. If the machine is unlawful, the owners may be ordered to remove the device or it may be seized when appropriate thereby obviating any ability to operate the machine in order to engage in gambling. Additionally, such an interpretation would serve the goals of curtailing gambling at its source. Thus, no obvious ambiguity exists.

■ Assuming the trial court correctly determined that operation of the machine does not constitute gambling based upon the skill exception, it does not follow that its

lawful use *ipso facto* insulates the machine from violation of the gambling device prohibition. It is conceivable that gambling devices could be used in a lawful manner. *Cf. Matter of Prop. at Marriott Inn, Clarksville*, 456 N.E.2d 444, 446 (Ind.Ct.App.1983) (determining that machine was gambling device and that petitioners' use of machine fell within meaning of professional gambling as well).

■ The parties agree and the trial court implicitly found that the machine does not always return the same value or property for the same consideration upon each operation. Neither dispensing a ticket for each operation nor requiring skill for a more successful operation can alter the violation of the clear meaning of the statute prohibiting "gambling devices."

The judgment is reversed.

Reversed.

GARRARD and DARDEN, JJ., concur.