In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3667

TOM GEORGE, CHRIS VITRON,
LORI CHAPKO and EDWARD SNEAD,
on behalf of themselves and
all others similarly situated,

*Plaintiffs-Appellants,*

*v.*

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 08-CV-1684—**William T. Lawrence**, *Judge*.

SUBMITTED FOR REHEARING AUGUST 18, 2010—
DECIDED OCTOBER 18, 2010

Before CUDAHY and KANNE, *Circuit Judges*, and
DARRAH,* *District Judge*.

* Hon. John W. Darrah, District Judge for the Northern
District of Illinois, sitting by designation.

PER CURIAM. Plaintiffs brought this proposed diversity-based class action against the National Collegiate Athletic Association ("NCAA") and Ticketmaster, alleging that the defendants' combined ticket-distribution scheme constituted a lottery in violation of Indiana law. The NCAA moved to dismiss, and the district court dismissed all claims with prejudice. Plaintiffs then appealed. On July 16, 2010, we reversed the judgment of the district court and remanded the case for further proceedings, with Judge Cudahy dissenting. Upon review after the filing of defendants "petition for rehearing and suggestion for rehearing *en banc*," we grant the petition for rehearing, vacate our opinion, stay the appeal, and certify three questions to the Indiana Supreme Court.

I.

Each of the plaintiffs in this case unsuccessfully applied for tickets to NCAA basketball games and forfeited handling fees along the way. After they failed to obtain tickets, plaintiffs claimed that the NCAA's ticket-distribution system constituted an illegal lottery under Indiana law.

The NCAA's relevant distribution system has been used to sell tickets for multiple events, including the NCAA's Division I men's and women's basketball and hockey championship tournaments. For each ticket sale, hopeful purchasers submitted a single application with up to ten entries. Each entry was a chance to win a pair of tickets and required payment of the ticket price plus

a six-dollar handling fee. While an applicant could win only one pair of tickets, many applicants purchased multiple entries in order to maximize their chances of getting one pair of tickets. No matter how many entries they applied for, applicants had to pay for each entry up front, along with the per-entry handling fee. Successful applicants would receive their tickets and, after some delay, a refund for their superfluous entries, while unsuccessful applicants would receive a refund for all of their entries. Both successful and unsuccessful applicants forfeited all handling fees to the NCAA.

Plaintiffs filed state law claims stemming from the operation of this ticket-distribution system on diversity grounds in the United States District Court for the Southern District of Indiana. To establish that the system was an illegal lottery, the plaintiffs argued that the handling fees, along with the NCAA's temporary retention of the applicants' money, qualified as consideration paid for the chance to win tickets. They also argued that the tickets were prizes, as they were difficult to obtain and worth far more than the face value paid. The district court dismissed the complaint, holding that the doctrine of *in pari delecto* foreclosed recovery. In its order, the district court also noted that a similar distribution system, used for the sale of Indianapolis Colts tickets, was held to not qualify as a lottery by the Indiana Court of Appeals in *Lesher v. Baltimore Football Club*, 496 N.E.2d 785, 789-90 (Ind. Ct. App. 1986).

Plaintiffs appealed the district court's dismissal of their complaint. In resolving the appeal, we first exam-

ined whether the plaintiffs had sufficiently alleged all three elements of an illegal lottery—prize, chance, and consideration—under Indiana law, *see Tinder v. Music Operating, Inc.*, 142 N.E.2d 610, 614 (Ind. 1957). We distinguished the NCAA's ticket-distribution system from the one in *Lesher* on two grounds. First, the ticket-distribution system in *Lesher* involved handling fees that were returned to unsuccessful purchasers; here, those fees were retained by the NCAA and thus qualified as consideration paid for a chance to win. Second, the plaintiffs in *Lesher* conceded that the sale price of the tickets was their actual value; here, the ticket purchasers claimed that the difficult-to-obtain tickets were worth far more than their sale price and thus qualified as valuable prizes. We held these distinctions made all the difference and the plaintiffs had pled sufficient facts to show that the NCAA system constituted an illegal lottery.

We went on to hold that the statutory exception for bona fide business transactions and the defense of *in pari delecto* did not apply. Indiana law excepts from the definition of gambling any participation in "bona fide business transactions that are valid under the law of contracts." Ind. Code. § 35-45-5-1(d). Reading this in tandem with Ind. Code § 35-45-5-3(a)(4), which proscribes all lotteries except those run by the State, we held that the bona fide business transactions exception applied to regulated investing and other similar activities, but not to the NCAA's ticket system. The doctrine of *in pari delecto*, which precludes recovery when parties are of equal wrongdoing, was also inapplicable: nothing in the pleadings suggested a mutual agreement between

the parties to engage in an illegal lottery, and there was nothing to indicate that the plaintiffs knew they were participating in an illegal lottery when they attempted to purchase tickets. Without an exception or other defense, we held that the district court erred in dismissing the plaintiffs' claims and remanded accordingly. Judge Cudahy dissented, asserting that the ticket system was not a lottery, that the broad statutory exception applied, and that the *in pari delecto* doctrine foreclosed recovery. The NCAA then petitioned "for rehearing and suggestion for rehearing *en banc*."

## II.

In its petition, the NCAA claimed that its ticket-distribution system did not qualify as a lottery under Indiana case law, that the exception for bona fide business transactions applied, and that the *in pari delecto* defense precluded recovery. We do note that the question of whether this ticket-distribution system constitutes a lottery under Indiana law is a close one, and our holding could have far-reaching effects on sports-ticket-distribution systems utilized by the NCAA and others.

At this juncture, we believe that affording the Indiana Supreme Court the opportunity to interpret the application of the Indiana statutes involved here appears to be the most prudent course of action. Therefore, to that end, we grant the petition for rehearing, vacate our opinion issued on July 16, 2010, and respectfully certify the following questions to the Indiana Supreme Court:

1. Do the plaintiffs' allegations about the NCAA's method for allocating scarce tickets to championship tournaments describe a lottery that would be unlawful under Indiana law?

2. If the plaintiffs' allegations describe an unlawful lottery, would the NCAA's method for allocating tickets fall within the Ind. Code § 35-45-5-1(d) exception for "bona fide business transactions that are valid under the law of contracts"?

3. If the plaintiffs' allegations describe an unlawful lottery, do plaintiffs' allegations show that their claims are subject to an *in pari delicto* defense as described in *Lesher*, 496 N.E.2d at 790 n.1, and *Swain v. Bussell*, 10 Ind. 438, 442 (1858)?

We invite reformulation of the questions presented if necessary, and nothing in this certification should be read to limit the scope of inquiry to be undertaken by the Indiana Supreme Court. Further proceedings in this court are stayed while this matter is under consideration by the Indiana Supreme Court.

QUESTIONS CERTIFIED.