May Term,
1858.

CRONK
v.
COLE.

*Per Curiam.*—The judgment is affirmed.

*J. L. Miller*, for the state.

*G. S. Orth* and *J. A. Stein*, for the appellee.

| 10 | 485 |
|---|---|
| 124 | 590 |
| 10 | 485 |
| 131 | 401 |
| 133 | 110 |
| 10 | 485 |
| 134 | 604 |

CRONK *v.* COLE.

The Supreme Court will not readily review the decision of an inferior Court
in setting aside a verdict and granting a new trial.

A contract cannot be confessed and avoided, and also denied by alleging a dif-
ferent contract, in the same paragraph of the answer. Such allegation is
surplusage.

It cannot be said that the market value of a commodity is peculiarly within
the knowledge of one person more than another, as the channels of informa-
tion are equally open to all; and a party to a contract of sale of a market-
able commodity, has no right to rely upon the representations of the other
party touching the market value of that commodity.

APPEAL from the *Fayette* Circuit Court.

*Wednesday,*
*June 23.*

WORDEN, J.—This action was commenced in the *Fay-
ette* Common Pleas. Issues were made up, and the cause
tried in that Court. A verdict was found for the plaintiff,
*Cronk*, a new trial granted, and the ·cause transferred, by
agreement of parties, to the Circuit Court for trial.

The complaint alleges that the plaintiff and defendant
made a contract on the 24th of *October*, 1855, by which
the defendant agreed to sell to the plaintiff what barley the
defendant then had on hand, amounting to between four
and six hundred bushels, to be delivered at *Cambridge City*
within four weeks from that time, at 1 dollar per bushel;
that the plaintiff agreed to buy and did buy said barley at
the price named, and paid the defendant thereon 10 dol-
lars, and 1 dollar for transportation, which the defendant
received and accepted on said contract; that the plaintiff

was ready to receive the barley at the time and place specified, and to pay for the same, but the defendant failed and refused to deliver the same or any part thereof; that the plaintiff duly demanded the barley at the time and place it was to have been delivered, and that it was then worth 1 dollar and 60 cents per bushel; wherefore, &c.

To this complaint the defendant answered—

1. By a general denial.

2. As follows, viz.: " And for a further defense, said defendant says that heretofore, to-wit, on the 25th of *October*, 1855, at said county, said plaintiff, *Gentleman*, dealer in barley, &c., called on said defendant and represented to him that he, the plaintiff, was engaged in the business of a brewer in *Connersville*, in the state of *Ohio*, and desired to purchase barley to ship to that place for his own use, and to induce the defendant to contract his barley to him, the plaintiff, as hereinafter stated, he, the plaintiff, falsely, and with the design to impose upon the defendant, and deceive and defraud him, defendant being ignorant of the price of barley in *Cincinnati*, stated that barley was selling in *Cincinnati* at 1 dollar and 10 cents per bushel, the price at which place governes the price in *Fayette* county, and then and there offered the defendant 1 dollar per bushel, whereupon the defendant said that if barley was selling at 1 dollar and 10 cents per bushel in *Cincinnati*, 1 dollar was as much as the plaintiff could afford to pay him, the defendant, for his barley, as the shipping would cost 10 cents per bushel; and the plaintiff again declared that barley was selling for 1 dollar and 10 cents in the city of *Cincinnati*, whereupon the defendant told him if the price of barley was 1 dollar and 10 cents only in *Cincinnati*, he might have his barley at 1 dollar per bushel, to be delivered at *Cambridge City;* that he did not know how much there was of it, but what he, defendant, had to spare the plaintiff should have, as aforesaid. But the defendant avers that it was false that barley was selling in *Cincinnati* at said time, to-wit, on the 25th of *October*, 1855, at 1 dollar and 10 cents per bushel, but that the truth is, the price of barley at said time in the city of *Cincinnati* was 1 dollar and 50 cents

per bushel, and which the said plaintiff well knew, and with the intent to cheat and defraud the said defendant made said misrepresentations, and the defendant confiding in the same, and with the understanding, and on the condition, that the price of barley was but 1 dollar and 10 cents in *Cincinnati*, accepted the offer of the plaintiff, as aforesaid. And said defendant says that afterwards, to-wit, on the —— day of *October*, 1855, the said defendant tendered to said plaintiff said sum of 11 dollars, and informed him that he, the defendant, did not consider himself bound by his engagements aforesaid, because of the false and fraudulent representations of the said plaintiff, and the said defendant now brings said money into Court; wherefore he demands judgment for costs," &c.

To this paragraph of the answer, a demurrer was filed, assigning for cause that the same does not contain facts sufficient to constitute a defense to the action; but the demurrer was overruled and exception taken. The plaintiff then took issue, and the defendant withdrew his general denial, and the cause was tried by a jury on the issue joined upon the paragraph of the answer above set out. Verdict for the defendant; motion for a new trial overruled; and judgment on the verdict.

Amongst other things, it is assigned for error that the Court below set aside the first verdict, on the motion of the defendant, and granted a new trial.

In this we can see no error that would authorize us to reverse the judgment. In *Powell* v. *Grimes et al.*, 8 Ind. R. 252, it is said: " This Court would very reluctantly set aside the granting of a new trial. Perhaps a case might occur in which it would do it; but where the Court below conducting the trial, is not satisfied with its fairness, we should be slow to differ with it." We suppose the motion was granted on the evidence adduced on the trial, upon an examination of which, we see no sufficient reason to disturb the action of the Court below in that respect.

Did the Court below err in overruling the demurrer to the second paragraph of the answer?

In order to answer this question it is necessary to deter-

mine the character of the paragraph. In its main scope and design, it seems to be affirmative in its character, setting up in avoidance of the contract, the false and fraudulent representations of the plaintiff. We regard it as being pleaded by way of confession and avoidance, although there is an allegation in it, that the defendant, confiding in the representations made, " and with the understanding and on the condition that the price of barley was but 1 dollar and 10 cents in *Cincinnati*, accepted the offer of the plaintiff. This statement as to the conditional character of the contract, amounts simply to a denial that the defendant made the contract set up in the complaint, which was absolute, and not conditional, and we think it should be regarded as surplusage, being inconsistent with the main design of the paragraph, which is to set up the fraud in avoidance of the contract. The contract cannot be confessed and avoided, and also denied in the same paragraph of the answer.

Regarding the paragraph as setting up the fraud merely, in avoidance of the contract, the question arises whether the facts set up are sufficient to bar the action. We think they are not.

In Chitty on Contracts, p. 681, it is said, in treating of such frauds as will avoid a contract, that "it is extremely difficult to advance any general principle, or elementary doctrine on the subject. Cases of fraud depend peculiarly on the particular facts which have occurred, the relative situation of the parties, and their means of information. On the one hand, Courts have endeavored to repress dishonesty; on the other hand, they have required and expected that each party shall be vigilant, and exercise a due degree of caution. *Vigilantibus, et non dormientibus succurrant jura.* It is difficult to imagine that a general misrepresentation as to value, &c., the truth of which a party has an opportunity of ascertaining—or the concealment of a matter which an individual of ordinary sense, vigilance or skill, might discover,—can, in law, constitute fraud."

In 2 Kent's Com. p. 484, it is said that "the common law affords to every one reasonable protection against fraud

in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information."

A knowledge of the value of barley in *Cincinnati* at the time of making the contract, was equally accessible to both parties. It cannot be said that the market value of a commodity is peculiarly within the knowledge of one more than another, as the channels of information are open equally to all; and we think a due degree of caution and diligence, applying to "the ordinary and accessible means of information," would enable a party to act and make his contracts understandingly, and therefore, that he has no right to rely upon representations of such character.

In 2 Parsons on Contracts, p. 270, it is said that "it must appear that the injured party not only did in fact rely upon the fraudulent statement, but had a right to rely upon it, in the full belief of its truth; for otherwise it was his own fault or folly, and he cannot ask of the law to relieve him from the consequences."

There are decided cases that in principle seem to be directly in point. In citing one, Chancellor KENT says: "The cases have gone so far as to hold, that if the seller should even falsely affirm that a particular sum had been bid by others for the property, by which means the purchaser was induced to buy, and was deceived as to the value, no relief was to be afforded; for the buyer should have informed himself from proper sources, of the value, and it was his own folly to repose on such assertions, made by a person whose interest might so readily prompt him to invest the property with exaggerated value." 2 Kent's Com. p. 486.

In *Bailey* v. *Merrill*, 3 Bulstr. 94, a carrier brought an action for deceit, for representing that a load weighed only 8 cwt., when in fact it weighed 20 cwt., whereby two of his horses were killed. Judgment was arrested, because the carrier might have weighed the load himself.

*Moore* v. *Turbeville*, 2 Bibb, 602, was this: The plaintiff had given the defendant an obligation to deliver him a

negro man equal in value to a negro man by the name of *Moses*, belonging to *James M' Callister*. At the time of executing the obligation, the plaintiff knew nothing of *Mo-ses*, or his value. The defendant well knowing the value of *Moses*, artfully, deceitfully, and with the intent to induce the plaintiff to enter into the contract, represented to him that *Moses* was at most, not worth more than 450 dollars. The plaintiff, relying with confidence on the representation, was thereby induced to enter into the obligation. The plaintiff tendered to defendant a negro man equal in value to *Moses*, according to defendant's representation of him; but the defendant refused to accept him on the ground that he was of less value than *Moses*. The defendant sued plaintiff on the obligation, and gave in evidence that *Moses* was worth 500 dollars, and recovered that sum, whereupon this suit was brought to recover for the false and fraudulent representations as to the value of *Moses*. The Court say in the case—"The law does not deny its aid in such case, because it looks upon a want of candor and sincerity with indulgence, but because it will not encourage that indolence and inattention which are no less pernicious to the interests of society. A diligent attention to our own concerns, as well as good faith to others, is a virtue; and the law, while it recognizes the rules which tend to preserve the latter, at the same time is careful to guard the principles which prompt to the exercise of the former. With respect to points plainly within the reach of every man's observation and judgment, and where an ordinary attention would be sufficient to guard against imposition, the want of such attention is, to say the least, an inexcusable negligence. To one thus supinely inattentive to his own concerns, and improvidently and credulously confiding in the naked and interested assertions of another, the maxim, "*vigilantibus non dormientibus, jura subveniunt*," emphatically applies, and opposes an insuperable objection to his obtaining the aid of the law. The ignorance of the plaintiff in this case in respect to the value of *Moses*, adds no strength to his claim. *Moses* belonged to a third person, and for ought

that appears was as accessible to the plaintiff as to the defendant." *Held*, in the case, that the declaration contained no cause of action.

A misrepresentation as to the legal effect of an instrument signed by a party, cannot be set up to avoid the instrument. *Russell* v. *Branham*, 8 Blackf. 277.—*Lewis* v. *Jones*, 4 B. & C. 506. In the case last cited, BAYLEY, J., remarks that "every man is supposed to know the legal effect of an instrument which he signs; and this must be taken to be a representation as to a fact within the knowledge of the creditor, and such misrepresentation will not have the effect of avoiding this instrument, because it was not calculated to mislead the creditor." Now, we apprehend that the reason why every man is presumed to know the law, and therefore to know the legal effect of an instrument signed by him, is that the channels of information in that respect are accessible, alike to him as to others. We know, as a matter of fact, that in a great many instances, men sign instruments without knowing precisely their legal effect, but if they do so relying upon a representation, without availing themselves of the sources of correct information, it is their own folly, and the law will not relieve them. The same principle applies with reference to the value of a commodity or article of commerce, in market. These are matters of general notoriety, upon which correct information can be obtained, and one man can, as well avail himself of the sources of information as another; and we think if he chooses to rely blindly upon a representation, rather than to inform himself, the law will not, because he was deceived, permit him to avoid his contract thus blindly entered into. In the case of *Foley* v. *Cowgill*, 5 Blackf. 18, DEWEY, J., observes that, "however much the moralist may censure the address some times resorted to by men of keen business habits, to effect advantageous contracts, misrepresentations as to the value or quantity of a commodity in market, when correct information on those subjects is equally within the power of both contracting parties, with equal diligence, do not, in contemplation of law, constitute fraud."

There may be circumstances which would render a representation of the kind alleged fraudulent; but no such circumstances are shown in the paragraph under consideration.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded for further proceedings not inconsistent with the opinion.

*B. F. Claypool*, for the appellant.

*N. Trusler, G. Trusler* and *S. Heron*, for the appellee.