## SUMNER *v.* UNION TRUST COMPANY OF INDIANAPOLIS ET AL.

[No. 17,449.   Filed May 22, 1946.   Rehearing Denied June 14, 1946.   Transfer Denied October 3, 1946.]

*Ruckelshaus & Ruckelshaus*, of Indianapolis, and *Christian & Waltz*, of Noblesville, for appellant.

*Dunbar & Dunbar*, and *Noel C. Neal*, all of Indianapolis, for appellees.

HAMILTON, J.—This is an appeal from an adverse judgment rendered on an amended claim filed by appellant Charles L. Sumner against the appellees Union Trust Company and Rose M. Rahke, executors of the estate of Emil K. Rahke, deceased.

The amended claim alleged that said Charles L. Sumner and Emil K. Rahke entered into a written contract on July 26, 1937, whereby Emil K. Rahke agreed to deliver to Sumner certain copyrighted and trademarked seal coupons, known as "Moon" and "Lightning," which were in turn to be sold by Sumner to customers in Marion County and elsewhere in the State of Indiana; and said written agreement provided further that after deducting all legitimate expenses necessarily incurred by said Sumner in the operation of sale and distribution of said copyrighted and trademarked seal coupons, the net profits of said business were to be equally divided between said Emil K. Rahke and Charles L. Sumner. The amended claim alleged further that said Rahke wrongfully deposited the sum of $21,011.77 of said net profits in the Indiana National Bank at Indianapolis and thereby wrongfully and unlawfully converted one-half of said sum to his own use, all without the knowledge and consent of appellant.

The appellees filed an answer which alleged in substance: That the claimant Charles L. Sumner and the decedent Emil K. Rahke at the time of the execution of said contract entered into a conspiracy to violate the criminal laws of the State of Indiana and particu-

larly § 10-2302, Burns' 1942 Replacement, § 2791, Baldwin's 1934, being § 555, Ch. 169, Acts 1905, by then and there conspiring to engage in a certain lottery scheme and gift enterprise for the purpose of sale and distribution of a certain gambling device called "Moon" and "Lightning" seal coupons, being a series of tally scores, each of said cards bearing a serial number and containing thereon a coupon, which coupon bore the serial number or daily tally score to which it was attached and which coupon contained certain numbers which entitled the holder thereof to a chance in said lottery scheme and gift enterprise for the distribution of certain sums of lawful money of the United States, which chance was based upon the winning baseball teams then playing in the United States of America and which entitled the holder of the winning ticket to a large sum of money. The answer alleged further the execution of said illegal lottery contract and that the money sued for was a part of the net profits received from the operation of said illegal lottery contract and conspiracy.

The cause was tried to the court which rendered its special findings of fact and conclusions of law thereon in favor of appellees and against appellant to the effect that the contract of July 26, 1937, was entered into in violation of § 555, Chapter 169, Acts 1905, § 10-2302, Burns' 1942 Replacement, § 2791, Baldwin's 1934, and that the business and operation conducted by the parties during the existence of said contract were void as against public policy.

The errors assigned are: (1) The court erred in each of its conclusions of law stated upon the special findings of fact; and (2) the court erred in overruling appellant's motion for a new trial. The grounds assigned in the motion for new trial are: (a) That the

decision of the court is not sustained by sufficient evidence; and (b) the decision of the court is contrary to law.

The pertinent facts found by the court were as follows: One Emil K. Rahke was the owner and manufacturer of certain copyrighted and trademarked seal coupons called "Moon" and "Lightning." That on July 26, 1937, said Emil K. Rahke, doing business as the "Specialty Sales Company," and the appellant Charles L. Sumner, doing business as the "No Mean City Sales Company" and "State Sales Company," entered into a written agreement for the sale and distribution of said seal coupons aforesaid. The parties to said agreement operated thereunder from July 26, 1937, to December 28, 1942, on which said date said business operation ceased by the consent of both parties. That under the terms of the written contract of July 26, 1937, Rahke agreed to sell and deliver to Sumner in such quantities as would satisfy and meet the needs and requirements of Sumner the copyrighted and trademarked seal coupons owned and manufactured by Rahke called "Moon" and "Lightning" at and for a stipulated price for each set of coupons. Sumner agreed to sell said coupons to the general public and inhabitants of Marion County and other counties in the State of Indiana. The method and scheme agreed upon and carried into effect under said contract from July 26, 1937, until the dissolution of said business on December 28, 1942, was as follows: Each coupon called "Moon" and "Lightning" was a printed coupon and on the same were written the names of the baseball teams of the major leagues and the American Association then playing in the United States; a coupon contained the names of three or four of said baseball teams; the names of the baseball teams were not visible but the same were covered

by a piece of paper denominated a seal. During the winter months scores of former baseball games were used as the basis of said coupon sale in lieu of current games. Rahke was to manufacture and furnish said coupons to Sumner, who, operating by and through his agents, employees, and representatives, would consign certain coupons to various dealers, from sixty to eighty-five in number, in the city of Indianapolis and throughout the State of Indiana to be sold and distributed by said dealers to the general public. The price at which said tickets were to be sold and which were sold ranged from five cents to twenty-five cents apiece. The purchaser of a coupon or ticket from the dealer was given a chance to receive a large amount of money if the coupon had thereon the names of the ball teams with the highest scores for that particular day, that is, if the coupon had the names of four teams and three of such teams had the highest scores, it was a winning ticket or coupon; also the coupon with two teams having two highest scores out of three was a winning ticket or coupon. The winning ticket or coupon paid the owner or holder thereof as much as $420. The dealers to which said coupons were consigned by Sumner received a commission of 25% of the money collected from and by the sale of said coupons. The money, so collected by the various dealers, less the commission of 25%, was delivered and turned over to Sumner who reported the details of the transactions with the dealers to Rahke. Rahke, by and through his agents and employees, kept book of each and every transaction and audited the accounts. All moneys, with certain exceptions hereinafter mentioned, were deposited in a checking account of the "No Mean City Sales Company" at the Fidelity Trust Company at Indianapolis, on which account Sumner alone had authority to draw checks.

Each week Rahke, or his agents, were furnished with an estimate of the cash that would be necessary to pay off the winning tickets or coupons. Thereupon a check which had previously been signed by Sumner would be filled out and the cash obtained with which to pay the winning coupons. The winners were then paid in cash by some agent of Sumner. Under the terms of the contract entered into on July 26, 1937, the net profits of said business, after deducting all legitimate expenses necessarily incurred by Sumner in the sale and distribution to dealers, were to be divided equally between Rahke and Sumner. The amount of said business, less dealers' commissions, from July 26, 1937, to December 28, 1942, was in the aggregate amount of $2,956,998.55.

That from August 10, 1938, until November 4, 1942, Rahke deposited in the Indiana National Bank at Indianapolis in the "No Mean Reserve Account" the sum of $31,260. On January 29, 1943, Rahke withdrew from said account and returned to the "No Mean City Sales Company" account at Fidelity Trust Company the sum of $10,248.23, leaving a balance of $21,011.77 in the account at the Indiana National Bank. That this amount of $21,011.77 was never returned to the checking account at the Fidelity Trust Company and Sumner never received any part thereof; that said funds should have been taken into account in the final settlement and accounting which was had by Rahke and Sumner after the dissolution on December 28, 1942, but the said Rahke wrongfully withheld the same from consideration and converted to his own use one-half of said sum of $21,011.77, to wit: $10,505.88, which belonged to said Sumner and said Rahke; that Sumner never had any knowledge of said bank account in Indiana National

Bank which Rahke had deposited as a reserve account in the event the business needed funds in an emergency.

The court further found that the grand total of the net profits of said business and operations aggregated $432,061.93 of which one-half, or the sum of $216,-030.965, belonged to each party. That Sumner had received a total amount of $221,986.35 as his one-half of the net profits of said business and that Rahke had received the total sum of $210,075.58, thus leaving a balance due in favor of Rahke of $5,955.38.

The court further found that Rahke and Sumner conspired and cooperated to violate the statutes of Indiana, § 555, Chapter 169, Acts 1905, § 10-2302, Burns' 1942 Repl., § 2791, Baldwin's 1934, and the rule of public policy prohibits such dealings and that Sumner and Rahke were equally culpable in such violation. That said business was carried on in violation of the laws of Indiana and against public policy and therefore void.

Upon such findings of fact the court rendered its conclusions of law to the effect that the law was with the defendants; that the contract of July 26, 1937, under which the business operations were conducted was in violation of § 10-2302, Burns' 1942 Repl., and void as against public policy; that claimant was not entitled to recover on his claim and that the defendants recover their costs.

The statute referred to, *supra*, namely § 10-2302, Burns' 1942 Repl., § 2791, Baldwin's 1934, reads as follows:

"Whoever sells a lottery ticket or tickets, or a share or shares in any lottery scheme or gift enterprise, or acts as agent for any lottery scheme or gift enterprise, or aids or abets any person or persons to engage in the same, or transmits money

by mail or express, or otherwise transmits the same, to any lottery scheme or gift enterprise for the division of property to be determined by chance, or makes or draws any lottery scheme or gift enterprise for a division of property not authorized by law, or who knowingly permits any building, tenement, wharf-boat or other watercraft owned, leased or controlled by him, to be used and occupied for any of the purposes above named, shall, on conviction, be fined not less than ten dollars [$10.00] nor more than five hundred dollars [$500]."

Appellant concedes that any contract entered into in violation of said statute is null and void and against public policy. Appellant concedes further that there is a general rule of law to the effect that a court will not lend its aid to settle a business carried on in violation of law, but he contends that, where a business transaction has been completed and fully consummated and one of the parties involved therein has converted and wrongfully appropriated certain funds belonging to another, the party whose funds have been so wrongfully converted can maintain an action against the wrongdoer to recover such funds, even though the funds may have been derived from a lottery or gambling enterprise operated in violation of law, and cites in support thereof the cases of *Kearney* v. *Webb* (1917), 278 Ill. 17, 115 N. E. 844; *Planters Bank of Tennessee* v. *Union Bank of Louisiana* (1874), 16 Wall. 483, 21 L. Ed. 473; *Matta* v. *Katsoulas* (1927), Wis., 212 N. W. 261, 50 A. L. R. 293; *State* v. *Robbins* (1890), 124 Ind. 308, 24 N. E. 978; *Pape* v. *Wright* (1888), 116 Ind. 502, 19 N. E. 459; and *Wilt* v. *Town of Redkey* (1902), 29 Ind. App. 199, 64 N. E. 228.

An examination of the authorities discloses that there is an exception to the general rule, as appellant asserts, which has been applied in certain instances where title

to the funds and property has been transferred and fully vested in the party seeking to recover the same, and such party is able to establish his ownership and title in and to the funds alleged to have been wrongfully converted without reference to, or relying upon, any illegal contract or unlawful enterprise which may have been conducted by the parties.

Appellant insists that under such rule he is entitled to recover in the instant case because the special findings of fact discloses that a final settlement and accounting was had between the parties as of December 28, 1942, and therefore appellant was not required to base his cause of action upon any illegal contract or unlawful enterprise which may have been conducted by the parties prior to said date.

The special findings of fact conclusively establish that the business enterprise conducted by Emil K. Rahke and appellant Charles L. Sumner, under and pursuant to the written contract dated July 26, 1937, was a lottery and gambling enterprise in which said parties were equally and jointly interested and that the funds deposited by Emil K. Rahke in the Indiana National Bank at Indianapolis and which were wrongfully converted by him to his own use and were not included in the final settlement had between said parties were funds which were obtained by him from the money received by Sumner during the operation of the unlawful and illegal enterprise conducted by Rahke and Sumner under the illegal contract set forth in the special findings of fact, and that the appellant's right and title to one-half of said deposit in the Indiana National Bank can only be established by reference to the written contract and the unlawful and illegal enterprise and business conducted and operated by Rahke and Sumner under and pursuant to said con-

tract. *Central Trust & Safe Deposit Co.* v. *Respass* (1902), 112 Ky. 606, 66 S. W. 421, 56 L. R. A. 479. Therefore, we hold that the written contract entered into by and between Emil K. Rahke and Charles L. Sumner and the business operations conducted by each of said parties thereunder were in violation of § 10-2302, *supra,* and were against public policy and the lower court was correct and fully justified in holding that each of said parties was *particeps criminis* and the court properly refused to assist either party in rendering an accounting or in making an adjustment of the legal rights in and to any of the funds derived from such illegal operations *Lynch* v. *Rosenthal* (1895); 144 Ind. 86, 89, 42 N. E. 1103.

The judgment is therefore affirmed.

ROYSE, P. J., not participating.

NOTE.—Reported in 66 N. E. (2d) 621.