BROOKS *v.* STATE OF INDIANA.

[No. 30,903. Filed December 22, 1967.]

F. *Laurence Anderson, Jr.*, of Gary, for appellant.

*John J. Dillon*, Attorney General, *John F. Davis*, Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal in a criminal action wherein the appellant, Foster Brooks, was first charged by affidavit in the Gary City Court as an agent for lottery. The affidavit was drawn under § 10-2302 Burns' Revised Statutes and reads as follows:

> "Affiant, being duly sworn, upon his oath says that upon or about the 7 day of February, 1964, at and in the county of Lake, State of Indiana, FOSTER BROOKS did then and there unlawfully, sell a lottery ticket or tickets and a share or shares in a lottery scheme or gift enterprise, and act *as agent for a lottery scheme and gift enterprises, and aided and abetted another person and persons to engage in the same* and otherwise transmitted the same to a lottery game or gift enterprise for the division of property to be determined by chance and made and directed a lottery scheme and gift enterprise for a division of property not authorized by law. Then and there being contrary to form of the

statute in such case made and provided against the peace and the dignity of the State of Indiana." (our emphasis)

The statute under which the affidavit was drawn reads as follows:

"10-2302—Whoever sells a lottery ticket or tickets, or a share or shares in any lottery scheme or gift enterprise, or *acts as agent for any lottery scheme or gift enterprise, or aids or abets any person or persons to engage in the same,* or transmits money by mail or express, or otherwise transmits the same to any lottery scheme or gift enterprise for the division of property, to be determined by chance, or makes or draws any lottery scheme or gift enterprise for a division of property not authorized by law, or who knowingly permits any building, tenement, wharf boat or other water craft owned, leased or controlled by him, to be used and occupied for any of the purposes above named, shall, on conviction, be fined not less than ten dollars ($10.00) nor more than five hundred dollars ($500)." Ind. Anno. Stat. § 10-2302 (1956 Repl.) (our emphasis)

The appellant was convicted in the Gary City Court of the offense charged after his motion to suppress the evidence was overruled. Thereafter the appellant filed an appeal bond and appealed the Gary City Court's findings and judgment in the Lake County Criminal Court. Prior to the trial in the Lake Criminal Court, a hearing was had on appellant's motion to suppress the evidence, previously filed in the city court, and upon the same issues raised there. His motion was again overruled. Later a trial to the court was had on the merits and resulted in the Lake Criminal Court finding the appellant guilty. Appellant's penalty was a $100.00 fine plus costs.

Thereafter the appellant filed a timely motion for new trial which was overruled. By his motion for new trial and the assignment of error presented here the appellant asserts the following errors:

(1) The trial court erred in denying appellant's motion to suppress and reject certain evidence.

(2) The finding of the trial court was not sustained by sufficient evidence.

(3) The finding and judgment of the trial court is contrary to law.

(4) Error in admitting certain State's exhibits numbered 1, 2, 3 and 4 over the objections of the appellant.

(5) The court committed error in the admission of certain testimony of a police officer as an alleged expert witness over the objection of the appellant.

The error asserted in this appeal resolves itself into one question: Was the evidence that was essential to the establishment of the offense as charged admissible against the defendant? This question was properly preserved by appellant's motion to suppress the evidence.

The thrust of the appellant's argument in this case centers around the actions and testimony of Gary Police Officer Louis Zervos, the arresting officer, who testified that when he first observed the appellant he saw policy slips hanging out of his pocket and, "I told him he was under arrest after I saw the policy slips hanging out of his pocket." Thus, at the time the arrest was made and before a search was made Officer Zervos, had seen nothing more than "policy slips" hanging out of appellant's pocket. It is the appellant's contention that before the officer could make the arrest without a warrant, he would have to have seen a misdemeanor being committed by the appellant.

It has long been settled in this State and elsewhere that a peace officer has authority to make an arrest without a warrant for a misdemeanor only if the misdemeanor is committed within the view of the peace officer. Ind. Anno. Stat. § 9-1024 (1956 Repl.). *Hart* v. *State* (1924), 195 Ind. 384, 145 N. E. 492. Clearly, an unlawful arrest cannot be the foundation for a lawful search. *Enlow* v. *State* (1955), 234 Ind. 156, 125 N. E. 2d 250.

For this Court to affirm the judgment we would be required to hold as a matter of law that:

(1) the mere possession of policy slips constituted a misdemeanor offense under the provisions of § 10-2302, *supra,* or

(2) that "policy slips" were a gambling device the possession of which is proscribed by § 10-2312.

With specific reference to No. 1 immediately above it should be noted that upon a careful reading of § 10-2302, *supra,* mere possession of "policy slips" does not constitute the offense of being an "agent for a lottery" nor does it constitute the offense of aiding or abetting, and therefore, appellant's arrest cannot be validated under that section.

With reference to No. 2 above, Ind. Anno. Stat. § 10-2312 (1956), provides:

> "10-2312. Whoever keeps or exhibits for gain, or to win or gain money or other property, any gaming table, Jenny Lind table, roulette, shuffle board, faro or keno bank, ninepin or ten-pin alley, wheel of fortune, or any gambling apparatus, device, table or machine of any kind or description, under any denomination or name whatever, or keeps or exhibits any billiard table, begatelle table, pigeon-hole table or pool table, for the purpose of betting or gaming, or allows the same to be used for any such purpose, shall, on conviction, be fined not less than twenty-five dollars ($25.-00) nor more than one hundred dollars ($100), to which may be added imprisonment in the county jail or workhouse not less than thirty (30) days nor more than six (6) months."

It should be noted, however, that the more recent statutory definition of a "gambling device" is found in Ind. Anno. Stat. § 10-2330 (4), (Supp. 1967). We are constrained to hold that "policy slips" are not gambling devices within our statutory definition.

> " 'Gambling device' means any mechanism by the operation of which a right to money, credits, deposits or other things of value may be created, in return for a consideration, as the result of the operation of an element of chance; any mechanism which, when operated for a consideration does not return the same value or thing of value for the same consideration upon each operation thereof; any mechanism,

furniture, fixture, construction or installation designed primarily for use in connection with professional gambling; and any subassembly or essential part designed or intended for use in connection with any such device, mechanism, furniture, fixture, construction or installation: Provided, That in the application of this definition an immediate and unrecorded right to replay mechanically conferred on players of pinball machines and similar amusement devices shall be presumed to be without value." Ind. Anno. Stat. § 10-2330 (4) (Supp. 1967).

The appellee State cites the case of *White* v. *State* (1905), 37 Ind. App. 95, 76 N. E. 554 as support for the declaration that a "policy slip" is a "gambling device" pursuant to Burns' Ind. Anno. Stat. § 10-2312, *supra*. In *White*, it was held that a pair of dice constituted a "gambling device." The *White* case, decided before § 10-2330 (4), *supra*, was enacted, may or may not still be good law. It is clear, however, that a "policy slip" such as is involved in this case, is not a "gambling device" as contemplated by either § 10-2312, *supra*, or § 10-2330 (4), *supra*.

Thus it would seem to be readily apparent from the record in this case that one who merely possesses "policy slips" is not guilty of an offense within the purview of § 10-2302, *supra*, either as an agent or as aiding and abetting the commission of the offense of operating a lottery. Therefore, the search of the defendant subsequent to his arrest without a warrant was an illegal search and seizure since the arresting officer did not observe the appellant in the commission of a misdemeanor before arresting him.

And since the legislature has neither seen fit to specifically define a "policy slip" as a "gambling device," nor to declare that mere possession of "policy slips" is an offense under the lottery statute § 10-2302, *supra*, this Court can only hold that the appellant's motion to suppress the evidence should have been sustained by the trial court and, upon that basis, his motion for new trial should have been granted. Therefore, the judgment of the trial court must be reversed.

Judgment reversed.

Jackson, C. J., Arterburn, Lewis, and Mote, JJ., concur.

NOTE.—Reported in 231 N. E. 2d 816.