**Chester KASZUBA and Bernice Kaszuba, Appellants,**

v.

**Richard ZIENTARA, Appellee.**

**No. 64S03–8704–CV–365.**

Supreme Court of Indiana.

April 6, 1987.
Rehearing Denied June 23, 1987.

Cohen And Thiros, Max Cohen, Merrillville, for appellants.

Skozen And Tebik, Richard S. Tebik, Munster, for appellee.

DeBRULER, Justice.

This case would not be before this Court had not the numbers 6–15–16–23–24–37 been selected on April 7, 1984, as the winning combination in the Illinois Lotto worth One Million Six Hundred Ninety-Six Thousand Eight Hundred Dollars ($1,696,-800.00). Had a different combination been selected, the disputed lottery ticket would be virtually worthless.

The facts giving rise to this case are as follows: The parties are residents of Indiana. Zientara, appellee, requested that his friend and co-worker, Chester Kaszuba, appellant, purchase an Illinois lottery ticket for Zientara. Bernice Kaszuba was employed in an Illinois tavern where lottery tickets were sold and Kaszuba had previously obtained tickets for Zientara. Kaszuba agreed and Zientara gave him an envelope containing the purchase price and the number selections for the ticket. Zientara's was a winning number combination and is worth $1,696,800.00. However, Kaszuba refused to give Zientara the ticket and made an effort to collect the winnings. Zientara filed suit claiming the proceeds on the grounds of fraud, bailment, breach of contract, conversion and agency. Appellants, Kaszubas, filed a motion to dismiss or for summary judgment on the basis the parties had entered into an illegal, and therefore unenforceable transaction. The motion was denied, the cause went to trial to a jury, and a verdict was returned in favor of Zientara. The Kaszubas alleged the trial court erred in denying their motion to dismiss or for summary judgment since the agreement between the parties was in contravention of the public policy and laws of the State and thereby rendered unenforceable in the courts of this State. The Court of Appeals agreed with Kaszuba and reversed the trial court, remanding the case with instruction to grant the motion to dismiss. *Kaszuba v. Zientara* (1986), Ind. App., 495 N.E.2d 761. We grant transfer to resolve this issue.

The issue presented is whether an Indiana agreement to purchase an Illinois Lotto ticket, in Illinois, is an illegal and immoral agreement and therefore unenforceable by Indiana courts.

The Court of Appeals rationale is that the purchase of a lottery ticket is an unlawful act and since the agreement was to accomplish such an act, the agreement was against the public policy of this State regarding lotteries and gambling and thereby unenforceable by our courts. Indiana Constitution, Art. 15, § 8 provides:

"§ 8. Lotteries prohibited. —No lottery shall be authorized: nor shall the sale of lottery tickets be allowed."

This constitutional provision against lotteries has been held to be broad enough to cover many forms of gambling. *State v. Nixon* (1979), 270 Ind. 192, 384 N.E.2d 152. Cf. *Tinder v. Music Operating, Inc.*, (1957), 237 Ind. 33, 142 N.E.2d 610. The concern of the drafters of this provision was to shelter the people as a whole from lotteries. *State v. Nixon, supra.*

IND.CODE § 35–45–5–2 criminalizes gambling:

"Unlawful gambling

Sec. 2. A person who knowingly or intentionally engages in gambling, commits unlawful gambling, a Class B misdemeanor".

These provisions without question reflect the constitutional mandate and long standing public policy in Indiana against lotteries. Indiana courts have generally refused to enforce contracts that are illegal or contrary to public policy. In *Swain v. Bussell and Others* (1858), 10 Ind. 438, the plaintiff ".. with the facts before him .." bought a chance in an Indiana lottery. By so doing he was deemed a participant in an illegal lottery and the courts would not be open to him to recover against the operators when their scheme proved fraudulent. Zientara, plaintiff below, is in no sense a participant in an illegal lottery. The same general rule was applied in *Sumner v. Union Trust Co. of Indianapolis* (1946), 116 Ind.App. 684, 66 N.E.2d 621, wherein the Indiana court held that it would not resolve a contract dispute between parties over their respec-

tive rights to proceeds derived from their joint operation of an illegal lottery in Indiana. The agreement between the parties in the present appeal did not involve the operation of an illegal lottery in Indiana.

Under our statutory scheme, the purchase of a lottery ticket is illegal in Indiana. *Rothrock v. Perkinson* (1877), 61 Ind. 39. However, the agreement in question here was not for the purchase of a lottery ticket in Indiana. It was to effectuate the purchase of an Illinois Lotto ticket in Illinois. If Zientara had driven to Illinois himself and purchased the winning ticket, it would have been perfectly legal. While the law in Indiana may prohibit the resale of such a lottery ticket within the confines of this state, there is no law in Indiana prohibiting the possession of such a lottery ticket. Indeed the creation of such a prohibition would not serve the policy behind the constitutional proscription against lotteries. Given the nature of our society and the free access across State boundaries, it is common for people who live in New Albany to work in Louisville, Kentucky, people who live in Covington to shop in Danville, Illinois, people who live in South Bend to go to Niles, Michigan for entertainment and people who live in Lawrenceburg to go to Cincinnati, Ohio for car repairs. Similar circumstances abound along the borders between Indiana and our contiguous sister states. It would be bizarre indeed, if our residents who make such routine interstate trips and who buy products for their neighbors as favors, would be unable to collect the price paid for an item because the sale of that item was restricted or limited in some way in Indiana.

There is no benefit to the citizens of this State in prohibiting an agreement of this nature. It will not shelter them from lotteries conducted in sister states. It will not deter people from purchasing lottery tickets in Illinois, Ohio or Michigan. Finding the agreement between Zientara and Kaszuba illegal and unenforceable as against public policy, rather than being of benefit to Indiana residents, would instead

reward people who convert the property of others to their own use.

There is nothing perceptibly evil, vicious, wicked, immoral or shocking to the prevailing moral sense in this agreement. It was simply an arrangement of convenience and neither party intended to circumvent the law or participate in an illegal act.

No Indiana law prohibits the purchase of a lottery ticket in Illinois and that is the "act" contemplated here. That contemplated act was legal, therefore the underlying agreement is also legal and enforceable in Indiana courts.

The verdict of the jury and the judgment of the trial court are affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

GIVAN, J., dissents with separate opinion in which PIVARNIK, J., concurs.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority in this case. There is no question that lotteries are legal in Illinois, nor is there any question that a resident of Indiana can drive to Illinois and legally purchase a lottery ticket. However, such is not the fact in this case. Kaszuba and Zientara entered into a contract in Indiana whereby Kaszuba would travel to Illinois with Zientara's money and choice of numbers and purchase a ticket for Zientara. It was then understood that Kaszuba would return to Indiana and deliver the purchased ticket to Zientara. This was purely a contractual scheme to deal in lottery tickets in the State of Indiana. Until Indiana legalizes such activity, this type of contract should be held illegal.

The Court of Appeals was correct in its decision and should be sustained.

PIVARNIK, J., concurs.